L. A. DONNAY v. JOHN S. BOULWARE AND OTHERS.

144 N. W. (2d) 711.

August 19, 1966—No. 40,124.

---

38

*Strong, Tully & Bush, Harlan B. Strong,* and *Wellington Tully,* for appellant.

*Thoreen, Thoreen & Lawson, Neumeier & Kimmel, Walter & Jansen,* and *John F. Thoreen,* for respondents.

MURPHY, JUSTICE.

This is an appeal from a summary judgment dismissing an action brought against John S. and Ellen B. Boulware by L. A. Donnay for the return of the sum of $25,000 paid pursuant to the terms of a land purchase contract which plaintiff claims was legally terminated, entitling him to a return of the money paid. The trial court agreed with defendant-sellers who claimed that because of a default by the plaintiff the amount paid had been forfeited under the terms of the agreement. This is one of six actions consolidated for trial, all of which relate to agreements for the purchase of real estate for residential development.

From the record in the Donnay case, which is before us, the complaint alleges that the defendants are owners of certain acreage property in Washington County; that pursuant to an agreement plaintiff paid the defendants $25,000; that plaintiff terminated the agreement in accordance with its terms and requested a return of the money paid, which demand was refused. The answer alleges that plaintiff failed to make payments within the time specified by the agreement as a result of which defendants were released from further obligations to perform and plaintiff forfeited any right to recover money paid.

From the contract which is made a part of the complaint, it appears that the Boulwares agreed to sell an area slightly in excess of 170 acres for "approximately the sum of $139,000.00, the exact amount to be based upon a price of $800.00 per acre." Payments were to be made as follows: $3,700 cash on the date of execution of the contract; $3,300 on or before October 15, 1961, and $3,000 on or before December 15,

1961, at which time the seller agreed to convey to the buyer a tract of 6 acres located in the area; $15,000 on or before May 1, 1962, and $15,000 on September 1, 1962, at each of which times the seller was to convey to the buyer a tract of 7 acres, contiguous to the prior conveyance. The payments made through September 1, 1962, were to make a total of $40,000.

The contract went on to provide that upon completion of the $40,000 payment, the sellers would convey to the buyer by warranty deed the original tract described, at which time the buyer would execute a purchase money mortgage for the balance of the purchase price. The contract also provided that possession of the property should remain with the sellers until the time of execution of the mortgage and that, for a period of 3 years after the execution of the mortgage, the sellers should have the right to use for agricultural purposes so much of the land as would not be actually occupied by the buyer for residential development. After various provisions with reference to the use and occupancy of the property subsequent to the giving of the mortgage, the contract provided for conditions under which the purchaser could secure release of the property from the lien of the mortgage.

The contract goes on to express what plaintiff claims is the controlling and determinative part of it. This clause characterizes the instrument as a conditional contract for purchase. It provides:

"This contract is conditioned upon certain conditions as hereinafter set forth, the failure or nonoccurrence of any one of which prior to the payment of said sum of $40,000.00 shall give Buyer the right to terminate this agreement, in which event all monies theretofore paid to Sellers shall be refunded to Buyer."

The condition which is relevant to this case provides:

"2. That the land can be platted into plots * * * and will receive F.H.A. and V.A. * * * approval."

It is clear from the writing thus far that the purchaser intended to acquire land for residential development on the condition that F.H.A. and V.A. approval could be secured. Denial of approval prior to the payment of $40,000 would give the buyer the right to terminate the agree-

ment and secure a refund of payments made. After the buyer paid the periodic installments totaling $25,000, he was informed by the F.H.A. that the project would not be given approval. He accordingly informed the sellers by letter on November 5, 1962, of this fact and requested that the amount paid be returned. The sellers refused, relying on paragraph 5 of the contract which contains the following provision:

"* * * [I]f the Buyer shall fail for a period of thirty (30) days after the same shall be due under the terms of this agreement to pay to the Sellers any of the sums herein agreed to be paid by the Buyer, either as installments on account of principal or as interest, taxes, assessments, or shall fail to comply with any of the covenants on his part to be kept and performed, then the Sellers shall be released from all obligations in law or equity to convey said property, and the Buyer shall forfeit all rights thereto and any and all payments theretofore made by the Buyer in excess of land already conveyed shall be considered as rent and compensation for the use and occupancy of said premises, and be retained by the Sellers and this contract may be terminated as provided by law."

It should be noted, however, that following the foregoing paragraph and certain other references made to the subject of providing a marketable title, the agreement returns to a restatement of the conditional nature of the contract, where the last provision recites:

"The Buyer is hereby granted the right and privilege to terminate this contract at any time prior to the payment of the said sum of $40,000.00 by written notice to the Sellers; provided that, however, if the Buyer shall exercise his right to so terminate the contract and the basis therefor is not one of the conditions the failure or nonoccurrence of which gives Buyer the right to terminate as hereinbefore provided, all payments made prior to this notice of termination shall be and remain the property of the Sellers as liquidated damages."

It is apparent that the provisions of the contract are inconsistent and ambiguous in that two clauses specifically provide that the purchaser may terminate the contract and secure a refund of installments at any time prior to the payment of $40,000 in the event F.H.A. and V.A. approval is denied, while an intermediate clause, paragraph 5, may indi-

cate that periodic payments, if not completed before October 1, 1962, may be forfeited without regard to the condition of F.H.A. or V.A. approval. It appears to be the purchaser's understanding that the September 1, 1962, date is not determinative and that he should be entitled to the return of his payments at such time as the conditions on which the purchase was negotiated occurred or failed to occur. He argues that under the terms of the contract he could not recover a refund after payment of the $40,000 and that it was not intended that that amount should be paid until F.H.A. approval was granted.

After issue was joined a pretrial conference was had, at which time the court set the matter for trial at a later date stating in its pretrial order:

"The only issues involved in this lawsuit is whether or not plaintiffs made diligent and proper application to the F.H.A. for approval of the housing development in question, and if, in fact, there actually was a definite, final refusal by the F.H.A. to approve said housing development; and the legal question of whether or not said purchase agreement constituted a contract for deed requiring statutory cancellation thereof, or whether under said contract there was an automatic forfeiture of the down payments."

It appears from the record that at the time the case was called for trial the court invited a motion for summary judgment for dismissal without benefit of notice of motion or supporting papers comprehended by Rule 56, Rules of Civil Procedure, and that an order for summary judgment was promptly entered. Thereafter a stipulation was entered into for the record which provided that all of the six cases, including agreements with other purchasers, "may be consolidated for purposes of an appeal by said plaintiffs"; that the contracts with the other sellers are "identical as to all provisions pertinent for such purpose"; that the plaintiff applied for F.H.A. approval in July 1962; and that on October 18 of that year the application was denied. The stipulation further provides that the contract was drafted by the plaintiff but that the defendants consulted their attorneys before executing it.

In granting the summary judgment the trial court concluded that un-

der the provisions of the contract the buyer had forfeited his rights to money paid by failing to make the payment of $15,000 within 30 days following September 1, 1962. Essentially the trial court's view was that the plaintiff could not terminate the contract while in default of that payment. The trial court expressed the view that if the plaintiff-buyer had "kept his payments current and had not defaulted for more than 30 days on his September 1, 1962 payment, then plaintiff could have rightfully terminated the contract for 'failure or nonoccurrence' of conditions and recovered his previous payments. Plaintiff had the opportunity to lawfully terminate but neglected to exercise that right by notice of termination before payment default or by making the September 1st payment to keep the contract current and thereafter terminating."

■ It is apparent that the forfeiture provisions of paragraph 5 cannot well be reconciled with other provisions of the contract which clearly give the purchaser the right upon denial of F.H.A. approval to terminate the contract and secure a return of payments made. Our view of the question presented is that the rights of the parties cannot be fairly determined by examining this agreement in a vacuum, nor can we agree wholly with the trial court in construing paragraph 5 as being controlling without regard to other provisions of the contract. Oleson v. Bergwell, 204 Minn. 450, 283 N. W. 770. The nature of this agreement is such that an attempt should not be made to determine the intent of the parties without an examination of all the facts and circumstances surrounding the transaction. The court should try to place itself in the position of the parties when they were dealing for the purchase of the real estate, and from a consideration of the instrument as a whole in light of the surrounding circumstances endeavor to arrive at their real understanding. We cannot assume that the parties intended to enter into a contract which was unjust or that either party assumed that he would secure an advantage not clearly expressed in its terms. 4 Dunnell, Dig. (3 ed.) §§ 1817, 1817a.

The contract itself suggests numerous questions upon which the acts and conduct of the parties might throw some light in aid of construction. From the record it appears that although the contract by its terms required the transfer of 20 acres of land to the purchaser, no such transfer

was made. On the contrary the summary judgment permits the sellers to retain the full amount of $25,000 without taking into consideration rights acquired by the purchaser to have conveyance of the property upon periodic payments. Moreover, it is not clear from paragraph 5 precisely what is intended with reference to forfeiture of money paid "in excess of land already conveyed." It may also be noted that paragraph 5 treats the agreement as a contract for deed which might be terminated as "provided by law," which would indicate that a cancellation proceeding pursuant to Minn. St. 559.21 might permit reinstatement.

■ It is a well-established general rule that where the intention of the parties may be gained wholly from the writing, the construction of the contract is for the court. But where, as here, the language is ambiguous, resort may be had to extrinsic evidence, and construction then becomes a question of fact unless such evidence is conclusive. Noreen v. Park Const. Co. 255 Minn. 187, 96 N. W. (2d) 33; Wiseth v. Goodridge Farmers E. & M. Co. 197 Minn. 261, 266 N. W. 850; Floyd v. Ring Const. Corp. (8 Cir.) 165 F. (2d) 125, certiorari denied, 334 U.S. 838, 68 S. Ct. 1496, 92 L. ed. 1763.

■ The construction which the parties in their dealings and by their conduct have placed upon the terms will furnish the court with persuasive evidence of their meaning. Floyd v. Ring Const. Corp. *supra;* South St. Paul v. Northern States Power Co. 189 Minn. 26, 248 N.W. 288; O'Connell v. Ward, 130 Minn. 443, 153 N. W. 865.

■ Although preliminary negotiations cannot be allowed to contradict or vary the plain terms of a written contract purporting to integrate the entire transaction, nevertheless where the terms or words used are ambiguous or reasonably susceptible of more than one interpretation, such negotiations may be considered in order to determine the meaning and intent of the parties. Wick v. Murphy, 237 Minn. 447, 54 N. W. (2d) 805.

■ Nor can we agree that it was proper for the trial court to grant summary judgment in this case. The standard by which summary judgment should be granted is expressed in Rule 56.03, which provides:

"* * * The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Summary judgment is a "blunt instrument" and should not be employed to determine issues which suggest that questions be answered before the rights of the parties can be fairly passed upon. It should be employed only where it is perfectly clear that no issue of fact is involved, and that it is not desirable nor necessary to inquire into facts which might clarify the application of the law. 3 Barron & Holtzoff, Federal Practice and Procedure (Rules ed.) § 1234.

■ It is generally recognized that summary judgment is not appropriate where the terms of a contract are at issue and any of its provisions are ambiguous or uncertain. Under such circumstances the trial court should allow the parties a full opportunity to present evidence of facts and circumstances and conditions surrounding its execution and the conduct of the parties relevant thereto. Abdallah, Inc. v. Martin, 242 Minn. 416, 65 N. W. (2d) 641; Elliott v. Occidental Life Ins. Co. 225 Cal. App. (2d) 510, 37 Cal. Rptr. 525; Broadway Maintenance Corp. v. City of New York, 19 App. Div. (2d) 96, 241 N. Y. S. (2d) 116; Associates Disc. Corp. v. Smith's Windham Lincoln Mercury Sales, Inc. 153 Conn. 176, 214 A. (2d) 909; Schenectady Disc. Corp. v. LaPalme, 25 App. Div. (2d) 595, 266 N. Y. S. (2d) 988; Moldan v. First Nat. Bank (Fla. App.) 174 So. (2d) 780.

Reversed and remanded for further proceedings including vacation of summary judgment.