Darrell M. PASKE, et al., Appellants,

v.

COUNTY OF DAKOTA, Respondent.

No. CX–84–547.

Court of Appeals of Minnesota.

Oct. 30, 1984.

Michael R. Sieben, Steven D. Hawn, Hertogs, Fluegel, Sieben, Polk, Jones & LaVerdiere, Hastings, for appellants.

Robert F. Carolan, Dakota County Atty., Hastings, for respondent.

Heard, considered and decided by POPOVICH, C.J., and LESLIE and CRIPPEN, JJ.

## OPINION

POPOVICH, Chief Judge.

This is an appeal from a summary judgment in favor of respondent Dakota County. Appellants claim they were county employees and are entitled to severance benefits. We agree and reverse.

## FACTS

Appellants are stenographers who served as court reporters for judges of the Dakota County Court. On April 10, 1980, the First Judicial District adopted a court unification plan under which all judges in the district have authority and jurisdiction to hear all matters. Dakota County is in the First Judicial District. Pursuant to a resolution of the First Judicial District Court judges, all court reporters for judges of the district

were deemed to be district court reporters effective January 1, 1982.

Until then, appellants' salaries were paid by Dakota County and accrued vacation and sick leave in accordance with the Dakota County Personnel Policy and Procedures Manual. William Healy, county courts manager, furnished annual accountings of accumulated vacation and sick leave to appellants. Since January 1, 1982, appellants' salaries and benefits have been apportioned among the seven counties of the First Judicial District.

Claiming they were county employees prior to January 1, 1982 and that the district judges' resolution terminated their employment with Dakota County, appellants requested severance pay as provided under Section IX(c) of the Dakota County Personnel Policy and Procedures Manual. Section IX(c) provides:

*Severance Pay*

All employees who retire or whose employment is terminated shall be entitled to payment for accumulated vacation time plus one-half (½) of all unused sick leave not to exceed fifty (50) days.

Appellants were furnished an accounting of their accumulated vacation and sick leave as of December 31, 1981 by Healy. The monetary amounts of appellants' claims are as follows:

| | |
|---|---|
| Darrell M. Paske | $ 7,701.98 |
| Thomas N. Lamson | 6,636.82 |
| Randolph J. Schacht | 7,155.74 |
| Jared. F. Whalen | 8,630.59 |
| Theresa Heesch | 1,607.32 |
| | $31,732.45 |

Dakota County maintained appellants were state employees, not county employees, and denied their claims for severance pay.

Appellants brought suit against Dakota County. The county filed a motion to dismiss for failure to state a claim. With the consent of both parties, the trial court treated respondent's motion as a motion for summary judgment. On January 17, 1984, the trial court found appellants were state employees at all times material to their

claim and granted summary judgment in favor of the county.

## ISSUE

Were appellants entitled to severance pay upon termination of employment as court reporters for county court judges?

## ANALYSIS

### 1. *Standard of Review.*

Rule 56.03 of the Minnesota Rules of Civil Procedure provides:

[Summary] [j]udgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law.

*Id.*

■■■ "[T]he moving party has the burden of proof and * * * the nonmoving party has the benefit of that view of the evidence which is most favorable to him." *Nord v. Herreid,* 305 N.W.2d 337, 339 (Minn.1981) (quoting *Sauter v. Sauter,* 244 Minn. 482, 484, 70 N.W.2d 351, 353 (1955)). All doubts and factual inferences must be resolved in favor of the nonmoving party. The court's function is not to decide issues of fact, but to determine whether there are issues of fact to be tried. *Id.* at 339. In *Donnay v. Boulware,* 275 Minn. 37, 144 N.W.2d 711 (1966), the Minnesota Supreme Court cautioned:

Summary judgment is a "blunt instrument" and should not be employed to determine issues which suggest that questions be answered before the rights of the parties can be fairly passed upon. It should be employed only where it is perfectly clear that no issue of fact is involved, and that it is not desirable nor necessary to inquire into facts which might clarify the application of the law.

*Id.* at 45, 144 N.W.2d at 716.

■■■ On appeal from a summary judgment, this court's function is to determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979).

### 2. *Employment Relationship.*

The parties do not dispute the underlying facts in this matter. Rather, Dakota County contends appellants were not county employees as a matter of law. Specifically, the county claims it did not control the means and manner of appellants' performance and did not have authority to hire, terminate or discipline appellants.

■■ The common law factors to be considered in determining whether an employment relationship exists are:

(1) The right to control the means and manner of performance;

(2) The mode of payment;

(3) The furnishing of materials and tools for the work;

(4) The control of the premises where the work is done; [and]

(5) The right of the employer to discharge.

*Duetsch v. E.L. Murphy Trucking Co.,* 307 Minn. 271, 274, 239 N.W.2d 462, 464 (1976); *see Wangen v. City of Fountain,* 255 N.W.2d 813, 815 (Minn.1977). Whether an employment relationship existed between appellants and Dakota County is a question of law to be resolved by applying the facts to the factors set out in *Wangen* and by reviewing applicable statutory provisions.

In its memorandum, the trial court found *Kuehn v. State, Department of Tenth Judicial District,* 271 N.W.2d 308 (Minn. 1978), controlled and granted the county's motion to dismiss. In *Kuehn,* the court considered whether, for the purpose of a worker's compensation action, a district court reporter was employed by the state or the counties which comprise the judicial district. Holding the district court reporter was an employee of the state, the court said:

[T]he traditional factors considered in determining whether employee was an em-

ployee of the counties clearly permitted the court of appeals to find there was no employment relationship between him and them. Although the counties paid employee's salary, mileage, and traveling and hotel expenses, they were required to do so by § 486.05. They also paid premiums for his group health insurance coverage, furnished him materials used in his work, and furnished the premises where he worked; but they could neither have hired nor discharged him and—the most significant factor of all—did not and could not control his performance of his duties.

*Id.* at 310.

The facts of *Kuehn* are similar, but important features distinguish these two matters. *Kuehn* involved a district court reporter who worked in all eight counties of the judicial district. No single county exercised a great deal of control over Kuehn's daily activities.

In contrast, appellants were county court reporters who worked almost exclusively for Dakota County. The county (a) paid appellants' salary and benefits, (b) furnished the material and equipment necessary to perform their duties, (c) furnished and controlled the premises where the work was done, (d) gave copies of the county Personnel Policy and Procedures Manual to appellants, (e) expected appellants to comply with the manual, (f) granted accrued vacation and sick leave in accordance with the county's policy, (g) required notification of the county court manager in the event that a court reporter could not work, and (h) required other county court reporters to substitute in case of another's absence.

█ A specific example of past practice and the control the county exercised over its court reporters occurred in 1979 when Phyllis Eisele, a Dakota County court reporter, requested a six month leave of absence from the Dakota County Board of Commissioners. The Board of Commissioners granted Eisele's request by a resolution which explicitly referred to the forfeiture of all county benefits if Eisele did not return to county employment following her leave of absence. When Eisele later decided she would not return to county employment, the Board of Commissioners authorized severance pay for Eisele's unused vacation and sick leave.

In 1979, Minn.Stat. § 465.72 (1978) provided:

[A]ll counties, cities, townships and school districts are hereby authorized and empowered to pay severance pay to all of *its employees* and to establish, prescribe and promulgate provisions, rules and regulations for the payment of such severance pay upon leaving employment prior to the normal retirement date.

*Id.* (emphasis added). A county may pay severance benefits only to "its employees." *Id.* Thus, it was not within the Dakota County Commissioners' discretion to grant severance pay to its county court reporters unless they were county employees. *See Spaulding v. Board of County Commissioners, Kandiyohi County,* 306 Minn. 512, 515, 238 N.W.2d 602, 604 (1976).

█ Past county practices are a factor to be considered in determining whether the county should pay severance benefits in this matter. We believe the county's granting of severance benefits in 1979 is further evidence of the control it exercised over county court reporters. *See* Restatement (Second) of Agency § 220 comment m (1958) (belief of parties may indicate assumption of control).

Minn.Stat. § 486.01 provides:

Each judge, by duplicate orders filed with the clerk and county auditor of the several counties of his district, may appoint a competent stenographer as reporter of the court, to hold office during his pleasure, and to act as his secretary in all matters pertaining to his official duties.

*Id.* The county contends appellants were state employees because state officers [1] ex-

---

1. *See Kuehn,* 271 N.W.2d at 310 (district court judges are state employees); *State ex rel.*

ercised authority over the hiring, discharge and supervision of appellants' duties as court reporters. We disagree.

> 'Employer' is an elastic concept, largely dependent upon the purpose for which it is being used.

> \*   \*   \*   \*   \*   \*

> As a practical matter, the county must be considered at least the 'joint employer' of county court reporters.

Brad P. Engdahl, Minnesota Special Assistant Attorney General, memo to Robert W. Kelly, Washington County Attorney (May 14, 1981).

■ Appellants have shown sufficient indicia of an employment relationship with the county. Among these indicia is the county's significant control of appellants' performance. In our view, the county is the proper political subdivision to be considered appellants' employer for the purpose of providing severance benefits.

## DECISION

Appellants were county employees prior to January 1, 1982 for the purpose of providing severance benefits. Dakota County is ordered to pay appellants severance pay.

Reversed.

CRIPPEN, Judge (concurring specially).

I concur in the result. The prior compensation plan for appellants has been terminated, and they begin from scratch to accumulate benefits available under a new multi-county pay package. They are entitled to severance benefits included in the prior one-county plan.

I cannot subscribe to the view that this result should be reached by characterizing court reporters as county employees. Use of that rationale invites similar views on issues involving the control of reporting personnel by the judiciary.

This difference of opinion flows from a conclusion that the obligation to compen-

*Rosckes v. Dreger,* 97 Minn. 221, 225, 106 N.W. 904, 906 (1906) (municipal court judges are

sate court reporters is clearly stated by statute, such that there is no need to reach the same result by determining that appellants are county employees.

Court reporters for the county courts are employed at the discretion of the county judges. Minn.Stat. § 487.11, subd. 2, and § 486.01 (1982). Under Minn.Stat. § 487.-11, subd. 2, compensation packages for the county court reporters are determined according to provisions in Minn.Stat. §§ 486.-05 (1982) and 486.06 (Supp.1983). Section 486.05, subd. 1 provides:

> In all judicial districts a salary range for court reporters shall be established annually by the judicial district administrator with the approval of a majority of judges of the district. The salary for each court reporter shall be set within that range annually by the district administrator after consultation with the chief judge. Nothing herein shall change the manner by which court reporters are paid, the proportions among the various counties of the judicial district by which the funds are allocated or any statutory provisions related to court reporter compensation other than the manner of setting salary.

The obligation to pay compensation for a county court reporter is definitely imposed upon the county board of commissioners.

> The county board of a county to which sections 487.01 to 487.39 apply shall provide and furnish to the county court the courtrooms, quarters, supplies, equipment, and *personnel* the court finds necessary for its purposes.

Minn.Stat. § 487.01, subd. 2 (1982). (Emphasis added)

The compensation of court reporters includes salary and other benefits. Appellants received their compensation from Dakota County, consistent with the provisions of § 487.01, subd. 2, and this compensation package included a promise for severance pay benefits. The compensation arrange-

state officers).

ment has been terminated, and severance benefits must be provided by the county.

These obligations of the county are established by law, whether or not appellants are county employees. I would so hold. Alternatively, if the employment of appellants is labeled, they should be viewed as county employees solely for compensation purposes.