Lori Ann **GUENTHER**, Appellant,

v.

**AUSTIN MUTUAL INSURANCE COMPANY**, Respondent.

No. C2–86–1163.

Court of Appeals of Minnesota.

Dec. 30, 1986.

Review Denied Feb. 18, 1987.

Andrew J. Wambach, Jr., Mahnomen, for appellant.

Duane A. Lillehaug, Moorhead, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and LANSING and LESLIE, JJ.

## OPINION

CRIPPEN, Judge.

This appeal questions whether summary judgment was inappropriate because genuine issues of material fact remain on appellant's claims for various no-fault insurance benefits. We affirm on the issue of replacement expenses for household services but reverse on the issues of income loss and occupational training and rehabilitation benefits.

## FACTS

Appellant Lori Guenther was severely injured in an automobile-train accident in September 1984. Guenther lives with her parents and is a beneficiary under their

no-fault insurance policy with respondent Austin Mutual Insurance Company. Appellant has not completely recovered from her physical injuries: for example, she cannot eat without pain, she has chronic back problems, cold weather makes walking painful, and pelvic injuries have resulted in severe constipation. Even more critically, she has chronic headaches, her memory and concentration abilities are impaired, and her verbal reasoning and linguistic skills are deficient. Respondent does not dispute that appellant's current medical disabilities were caused by the accident.

At the time of her injury, appellant had been employed on her parents' farm. As payment for her work, appellant's parents provided room and board for her and her son Jon, gave her spending money, and provided financial assistance for her schooling. In addition, appellant's mother and younger siblings cared for Jon while she was working. In good weather, Guenther worked on the farm for 12–15 hours a day. In the evenings and on rainy days she helped her mother with the housework. Guenther and her father estimate that she spent between 20 and 30 percent of her time doing housework.

Before coming to work on the farm, appellant had been enrolled in a business administration program at Valley City State College. She studied one quarter, then took the next quarter off for Jon's birth. Jon then went to live with Guenther's parents while she returned to Valley City. Appellant withdrew from college after three additional quarters because of an academic suspension. In July 1984, after working part-time for several months baking for a restaurant, appellant agreed to work for her parents and so began living with them and Jon on the farm.

After the accident, appellant recuperated at her parents' home. She has not been able to return to work on the farm. In September 1985, she enrolled at Bemidji State University, again studying business administration. However, she did poorly and transferred to a sales and management program at Bemidji Vo-Tech in November 1985. She was continuing in that program when the trial court decided this case in May 1986. Throughout this time, appellant's parents have continued to provide room and board for her and her son. They have also given her financial assistance with her schooling.

Appellant commenced this action in July 1985, asking that respondent be required to pay various no-fault insurance benefits. Appellant requested replacement service loss benefits because her injuries have prevented her from providing care and maintenance for her household. Appellant also asked for income loss benefits because she has been unable to work since the accident. Finally, she asked for occupational training and rehabilitation benefits to recover costs incurred at Bemidji State University and Bemidji Vo-Tech, and to pay for any future schooling that is likely to substantially contribute to her medical or occupational rehabilitation.

The trial court granted respondent's motion for summary judgment on the issues of replacement service loss and income loss benefits. The court also granted summary judgment for respondent on appellant's claim for occupational training benefits for expenses incurred at Bemidji State University, but the court retained jurisdiction over all other occupational training and rehabilitation claims, including claims for expenses appellant has incurred at Bemidji Vo-Tech.

## ISSUES

1. Is appellant entitled to replacement service loss benefits?

2. Is appellant entitled to income loss benefits?

3. Is appellant entitled to occupational training and rehabilitation expenses for expenses incurred at Bemidji State University?

## ANALYSIS

Summary judgment is proper when:
the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law.

Minn.R.Civ.P. 56.03. Summary judgment should not be employed unless it is perfectly clear that no issue of fact is involved and it is not necessary to inquire further into facts that might clarify application of the law. *Donnay v. Boulware,* 275 Minn. 37, 45, 144 N.W.2d 711, 716 (1966).

On appeal, this court views the evidence in the light most favorable to the party against whom the motion was granted and determines whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Lindner v. Lund,* 352 N.W.2d 68, 70 (Minn.Ct.App.1984) (citing *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979)).

1. The trial court determined that appellant is not entitled to replacement service loss benefits under Minnesota's no-fault automobile insurance act. *See* Minn.Stat. § 65B.44, subd. 5 (1984). The statute provides for reimbursement of expenses incurred in obtaining substitute services for work that the injured person otherwise "would have performed not for income but for the direct benefit of [herself] or [her] household." *Id.* In addition, the statute specifically provides that these benefits are payable only if the injured person "normally, as a full time responsibility, provides care and maintenance of a home." *Id.*

■ Appellant contends that although her mother has the full time responsibility for her parents' household, appellant has full time responsibility for a separate household consisting of herself and her son Jon. We cannot agree. Even assuming that appellant has a separate household, she has not shown that she has full time responsibility for that household. Appellant's mother has continued to provide primary care for Jon just as she did before appellant began living with her parents. Appellant's siblings also share responsibility for Jon's care. Both appellant and her father testified that she spent only 20 to 30

percent of her time caring for Jon and doing work around the house.

Appellant argues that the trial court gave undue attention to the statements that she spent only 20 to 30 percent of her time on child and home care. *See Rindahl v. National Farmers Union Insurance Cos.,* 373 N.W.2d 294, 297 (Minn.1985) ("emphasis is not on how much of this person's total available work time is spent on household management"). *Rindahl* further held, however, that the emphasis is on:

the nature and extent of the responsibilities performed and how much of the aggregate family time devoted to household care is contributed by the injured person in comparison to other members of the family.

*Id.*

■ The trial court properly considered the amount of time appellant spent on household care as one of several factors relevant to claims brought under subdivision 5. The responsibility of appellant's mother and siblings for Jon's care is another significant factor, as is the characterization given to appellant's housework by both appellant and her father as only "helping" appellant's mother. In comparison to other members of the family, particularly appellant's mother, appellant's contribution to household care does not meet the statute's requirement that she have "full time responsibility" for the care and maintenance of a home.

2. The trial court also determined that appellant is not entitled to income loss benefits. The statute provides, in part:

Disability and income loss benefits shall provide compensation for 85 percent of the injured person's loss of present and future gross income from inability to work proximately caused by the nonfatal injury * * *.

Minn.Stat. § 65B.44, subd. 3 (1984).

■ The trial court found that the room, board, and financial aid for schooling that appellant received from her parents before her accident constituted income. *See* Minn. Stat. § 65B.43, subd. 6 (1984) (definition of

income includes "tangible things of economic value produced through work"). However, the trial court denied appellant's claim for income loss benefits because it found appellant had suffered no actual income loss and because it concluded that under the circumstances presented, "speculation and conjecture would necessarily have to be the basis for a determination of 'loss of income' and such a basis is prohibited." We conclude that there are genuine issues of material fact that preclude summary judgment on either of these grounds.

The trial court relied on *Rindahl* and its proposition that actual loss is required in order to receive loss of income benefits. *See Rindahl*, 373 N.W.2d at 299. *Rindahl* involved a self-employed person who took no salary from the business and whose work was performed at no cost by other family members after she was injured. *Id.* at 298. The supreme court held that an injured self-employed person could not base income loss benefits "on the reasonable value of [their] services," but must instead prove costs incurred to pay substitute help, loss of tangible things of economic value, or loss of other earnings from work. *Id.* at 299.

Appellant urges this court to limit *Rindahl's* holding to cases involving self-employed persons. Because we hold that the trial court's determination that appellant did not suffer actual income loss was premature, however, we neither apply nor distinguish *Rindahl.* It is undisputed that appellant's inability to work on the farm did not cause her parents to cease providing her with the same benefits that they had previously given her in exchange for her work. The trial court found that these benefits were income before the accident and the court similarly treated the benefits provided after the accident. Whether those benefits continued to constitute income, however, is a disputed question of material fact. The statutory definition of income requires that the benefits received be "produced through work." Minn.Stat. § 65B.43, subd. 6 (1984). When appellant's injuries forced her to stop working, the benefits she continued to receive from her

parents may have been income for work performed before she was injured or may have been their gift to her while she recuperated, or both. Until this question has been answered, determination of appellant's actual income loss cannot be made.

■ We also note that the statute does not limit recovery of loss of income benefits to losses connected to the employment held at the time of the injury. *See* Minn. Stat. § 65B.54, subd. 1 (1984) ("[l]oss accrues not when injury occurs, but as income loss * * * is incurred"). The question of whether appellant's disabilities have continued to prevent her from "engaging in any substantial gainful occupation or employment on a regular basis" for which she "is or may by training become reasonably qualified" has not been addressed. *See* Minn.Stat. § 65B.44, subd. 3 (1984). The resolution of these issues is critical to appellant's eligibility for income loss benefits. *See Chacos v. State Farm Mutual Auto Insurance Co.*, 368 N.W.2d 343, 347 (Minn. Ct.App.1985), *pet. for rev. denied*, (Minn. Aug. 19, 1985) ("It is not the availability of work but the existence of a disability preventing work which determines the right to income loss benefits"); *Koller v. American Family Mutual Insurance Co.*, 366 N.W.2d 684, 685 (Minn.Ct.App.1985) (an insured who was unable to return to a prior job was entitled to income loss benefits until he became retrained and qualified for employment).

The trial court's second reason for denying appellant's claim for income loss benefits is also inappropriate as support for summary judgment. The trial court properly cited *Arons v. Allstate Insurance Co.*, 363 N.W.2d 832 (Minn.Ct.App.1985), in which we held that a "finder of fact may not base an award of damages on speculation or conjecture." *Id.* at 833. *Arons*, however, was not a summary judgment case but involved a post-trial dispute over the trial court's finding of fact that the evidence on income loss was too speculative. *Id.* Here, given that the parties dispute the duration of appellant's disability,

the amount of her income loss, if any, cannot be determined without a full presentation of the facts.

3. Appellant also alleges error in the trial court's denial of occupational training benefits for expenses she incurred at Bemidji State University. An insurer will be responsible for the cost of rehabilitative occupational training:

> if the procedure, treatment, or training is reasonable and appropriate for the particular case, its cost is reasonable in relation to its probable rehabilitative effects, and it is likely to contribute substantially to medical or occupational rehabilitation.

Minn.Stat. § 65B.45, subd. 1 (1984).

The trial court concluded that appellant's pre-injury failure in Valley City's business administration program indicated that "pursuing that same course of study at Bemidji State after the accident was not 'likely to contribute substantially to medical or occupational rehabilitation.'" The facts surrounding appellant's record at Valley City are not developed in the record. Moreover, appellant attributes her poor performance at Bemidji State to problems caused by her injuries—chronic headaches, memory and concentration lapses, and the impairment of her ability to absorb or retain the course material. Appellant is continuing medical treatment for these disabilities and for depression she suffers because of the disabilities.

Appellant further states that she has a talent for crafts and feels that her plans to open a craft shop require a knowledge of business administration. In a report submitted to the court, psychologist Dr. Larry Fisher stated that sales or business management would not be his "first choice" for appellant, given her continuing physical problems, but that:

> crafts are an excellent area of specialization for her and if business study is the only way for her to get into the craft business then I think that this is certainly acceptable given her test profile. With appropriate treatment for her depression, I think she could succeed in school and succeed in her career despite

the mild linguistic difficulty she is having.

Both the psychologist's report and appellant's statements about her career goals are evidence that business administration training is likely to contribute substantially to appellant's rehabilitation. Neither appellant's earlier failure in a similar program at Valley City nor the influence of her present disabilities on her performance at Bemidji State are reasons to conclude as a matter of law that the Bemidji State program did not aid in appellant's rehabilitation. Rather, these are genuine issues of material fact that render summary judgment inappropriate on this issue. On remand, the trial court must make further inquiry into facts that may clarify application of the law to appellant's claim for the Bemidji State expenses.

### DECISION

The trial court properly ordered summary judgment on appellant's claim for replacement services benefits. Summary judgment was inappropriate on the claims for income loss benefits and occupational training and rehabilitation benefits.

Affirmed in part, reversed in part, and remanded.