**EMPIRE STATE BANK, Appellant,**

v.

**Douglas J. DEVEREAUX, et al.,
Respondents.**

No. C5–86–1674.

Court of Appeals of Minnesota.

March 17, 1987.

James R. Anderson, Marshall, for appellant.

Kevin Stroup, Clarkfield, for respondents.

Heard, considered, and decided by WOZNIAK, P.J., and LESLIE and RANDALL, JJ.

## OPINION

LESLIE, Judge.

Empire State Bank appeals from a judgment in favor of respondents Douglas and Helen Devereaux. The trial court determined appellant may not enforce a mortgage against respondents' property since the mortgage only secured a $46,500 loan and that loan had already been repaid. Appellant claims the mortgage is enforceable because it was to act as security for respondents' *entire* previous debt with the bank. We affirm.

## FACTS

On March 17, 1985 respondents Douglas and Helen Devereaux went to the Empire State Bank and talked with Gary Gabrielson about a loan of $46,500 to pay for some cattle they had just purchased. Gabrielson, the Vice-President of the bank, was familiar with the Devereauxs and their history of dealings with the bank. At that time they had an outstanding loan balance of $280,000. The projected income on their farm had caused some concern relating to repayment of this existing loan. The Devereauxs also had not received prior approval on some previous purchases as required by the bank. Additionally, the $46,500 loan would put the Devereauxs over the bank's $325,000 loan limit for individual customers. Because of these issues Gabrielson took the Devereauxs' request to the executive loan committee for approval. The executive committee approved the Devereauxs' loan request on the condition that the Devereauxs supplied a $100,000 mortgage on their land. Later this was modified by both parties to amount to a $150,-000 mortgage.

Gabrielson drew up the loan agreement as follows:

### LOAN AGREEMENT

LENDER:      EMPIRE STATE BANK

BORROWER:   Doug and Helen Devereaux

Empire State Bank of Cottonwood, MN has established a line of credit to Doug and Helen Devereaux for the fiscal period ending August 8, 1986. The peak balance to be extended is $46,500 evidenced by credit application dated 12/19/85 and note dated 12/19/85. Interest rate will be 14%. The parties agree:

1. Loan purpose of the $46,500 set up is to be used as follows:

| | |
|---|---|
| Renewal of present notes | |
| Operating line of credit | |
| Capital line of credit | |
| Feeder livestock line of credit | 46,500 |
| TOTAL AMOUNT OF NOTE | 46,500 |

2. Loan Peak Balance, not including interest, not to exceed 46,500. Loan peak may be less than total amount of note. Loan peak on all loans not to exceed $340,000.

3. Repayment to be $46,500 plus ____ interest. Repay sources and dates are as follows:

| DATE | SOURCE | AMOUNT |
|---|---|---|
| August 1, 1986 | Cattle | 46,500 plus interest |
| | TOTAL REPAY | 46,500 |

Repay to be applied first to interest and then to principle. Repay is based upon cash flow dated _____.

4. Collateral to secure this loan will be all livestock, machinery, equipment, feed, crop, coop and elev. dividends and real estate mortg. for $100,000 (crossed out) $150,000 (written in and initialed) on 160 acres.

It is understood that all proceeds from the sale of collateral is to be applied to the loan. Written authorization from the bank is necessary prior to transfer of any secured asset.

This loan agreement is also supported by: Application, Note, Financing Statement, and Security Agreement. Security interest in 160 acres for $100,000 (crossed out) $150,000 (written in and initialed) to be given by February 1, 1986. Any significant change in debtor's financial condition should be reported to the bank as soon as possible. Debtor agrees to permit bank to view collateral upon request. Empire State Bank requests that borrower seek total refinancing as soon as possible. Debtor agrees to supply the bank with accurate financial statements (Balance Sheet and Operating Statement).

EMPIRE STATE BANK

| (signature) | (signatures) |
|---|---|
| LENDER | BORROWER |

Respondents repaid the $46,500 they borrowed pursuant to this agreement, but they failed to ever deliver the $150,000 mortgage to appellant. Subsequently appellants defaulted on their other debts with the bank and declared bankruptcy. Appellant brought suit to compel delivery of the $150,000 mortgage under the agreement. Appellant claimed the mortgage was to act as security for respondent's entire debt with the bank.

Bank Vice-President Gabrielson testified at trial that the mortgage was to secure all of respondents' debts with the bank. Yet, when asked whether respondents were ever told this was the case he responded that he could not remember. Respondents testified they were told the mortgage was to only secure the $46,500 loan.

Based on the agreement in evidence and this testimony, the trial court found:

[T]he promised mortgage of $150,000.00 contained in the loan agreement dated December 19, 1985 was only applicable by its terms to the $46,500.00 loan. [T]he $46,500.00 loan having been timely repaid, the plaintiff may not enforce the $150,000.00 mortgage against defendants.

The trial court therefore entered judgment in favor of respondents denying appellant's motion for amended findings or a new trial.

### ISSUE

Did the trial court properly find that the $150,000 mortgage on respondents' farm was unenforceable since it only secured respondents' $46,500 loan with appellant bank and that loan had been repaid?

### ANALYSIS

The trial court found that respondents entered into a loan agreement with appellant bank for a $46,500 loan secured by a $150,000 mortgage on respondents' land. The court noted Vice-President Gabrielson's testimony that the promised mortgage was to cover all of respondents' line of credit, but that Gabrielson did not remember whether respondents were made aware of this intent. In examining the loan agreement itself the court found:

This loan agreement makes reference to a loan of $46,500.00. This loan agreement does not state that the $150,000.00

security interest was to be applied to the balance of other outstanding loans. The only direct reference to the other outstanding loans of $290,000.00 is a reference in the agreement stating: "Loan Peak of all loans not to exceed $340,000.00." An indirect reference to the $290,000.00 debt is contained in the last paragraph of the agreement where it is stated: "This loan agreement is also supported by: Application, Note, Financial Statement, and Security Agreement. Security Interest in 160 acres for $150,000.00 to be given by February 1, 1986." The February 1, 1986 date is the date when the $290,000.00 loan was due.

Based on these findings the court concluded that the $150,000 mortgage only secured the loan specified in the agreement. Since that loan had been paid, appellants could not enforce the $150,000 mortgage. We find that the trial court's conclusion was correct.

▆▆▆ The fundamental approach to construing contracts is to allow the intent of the parties to prevail. *Turner v. Alpha Phi Sorority House,* 276 N.W.2d 63, 66 (Minn.1979). It is a well settled general rule that where the intention of the parties may be gained wholly from the writing, the construction of the instrument is a question of law for the court to resolve. *Donnay v. Boulware,* 275 Minn. 37, 44, 144 N.W.2d 711, 716 (1966). In such a case this court would not be required to defer to the trial court's findings. *See e.g. Janssen v. Johnson,* 358 N.W.2d 117, 120 (Minn.Ct. App.1984). Yet, where the language is ambiguous resort may be had to extrinsic evidence. *Donnay,* 275 Minn. at 44, 144 N.W.2d at 716. Construction then becomes a question of fact unless the evidence is conclusive. *Id.* As such the trial court's construction should not be reversed unless it is clearly erroneous and due regard must be given to the trial court's opportunity to judge the credibility of the witnesses. Minn.R.Civ.P. 52.01. Additionally, where there are ambiguous terms or the intent is doubtful, the contract will be construed against the drafter. *Turner,* 276 N.W.2d at 66.

▆▆ Here it is unclear whether the trial court's interpretation of the loan agreement was confined to the bounds of the document itself, and was thus made as a matter of law or, whether the determination was based on extrinsic evidence, and was thus made as a finding of fact. Under either theory the trial court's conclusion, that the mortgage was unenforceable since it applied only to the repaid $46,500 loan, was correct.

The loan agreement itself makes no mention of applying the $150,000 mortgage to anything but the $46,500 loan specified in the instrument. As the trial court indicated, the agreement only referred to respondents' other debts tangentially. Neither of the two references noted by the court lend sufficient support to appellant bank's assertion that the mortgage was to cover respondents' complete line of credit. The language of the agreement refers only to the $46,500 and a $150,000 mortgage as security. Thus the language of the agreement alone supports a trial court finding as a matter of law that the disputed mortgage applied only to the loan specified in the instrument itself.

If the trial court found the instrument to be ambiguous and considered parol evidence to explain its meaning, the result is still the same. The record contains testimony on both sides of the issue. Two loan officers for appellant Empire State Bank claimed the mortgage was intended to cover respondents' complete line of credit, including all previous debts. Respondents both testified that the agreement was intended to only secure the $46,500 loan specified in the agreement. Based on this and other conflicting evidence, and this court's standard of review for such a question, the trial court's finding was not clearly erroneous. There was sufficient evidence supporting a finding that the instrument was intended to apply the mortgage only as security for the particular specified loan and not all previous debts. Consequently, the trial court properly found the $150,000 mortgage to be unenforceable.

**588**

## DECISION

The trial court properly found that the $150,000 mortgage on respondents' farm was unenforceable since it only secured respondents' $46,500 loan with appellant bank and that loan had been fully repaid.

Affirmed.