*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0741**

Anchor Bank, N. A.,
Appellant,

vs.

Matthew L. Gulbransen,
Respondent.

**Filed January 25, 2016
Reversed and remanded
Reilly, Judge**

Hennepin County District Court
File No. 27-CV-14-2329

Court J. Anderson, Benjamin J. Hamborg, Henson & Efron, P.A., Minneapolis, Minnesota
(for appellant)

Donald R. McNeil, Stephen F. Buterin, Heley, Duncan & Melander, PLLP, Minneapolis,
Minnesota (for respondent)

Considered and decided by Rodenberg, Presiding Judge; Schellhas, Judge; and

Reilly, Judge.

## UNPUBLISHED OPINION

**REILLY**, Judge

Appellant challenges the summary-judgment dismissal of its claim for breach of a

non-solicitation and confidentiality agreement, arguing that the district court erred by

determining as a matter of law that the agreement did not apply to securities that respondent

had sold from appellant's premises as a representative of a third-party broker-dealer. Because we determine the non-solicitation provision is ambiguous and the confidentiality provision presents genuine issues of material fact, we reverse and remand.

**FACTS**

In June 2006, respondent Matthew Gulbransen was hired by appellant Anchor Bank to sell investment products and services to the public. On June 22, 2006, respondent executed an "Employee Confidentiality and Non-Solicitation Agreement" (the agreement). The agreement contained a whereas clause that provided that appellant "is engaged in the specialized and highly competitive business of selling securities and investment services."

The non-solicitation provision states:

> During Employee's employment with Anchor Investment Management, and for a period of two (2) years following Employee's termination of employment, Employee will not, on his or her own behalf or on behalf of any other person or entity except the Company, directly or indirectly plan, organize, engage in, solicit or attempt to solicit any client or potential client of the Company for the purpose of offering or selling a product or service offered or sold by the Company as of the date of Employee's termination from employment. The term "any client or potential client of the Company" as used in this Section 3.01 includes any person for whom Employee provided a product or performed a service while employed with Anchor Investment Management, any person whom Employee solicited for the purpose of providing a product or performing a service during employment with Anchor Investment Management, or of whose existence Employee learned while employed with Anchor Investment Management.

Another whereas clause provided that appellant, "through its creativity and experience[,] has developed and acquired valuable Confidential Information (as hereinafter

defined), including . . . valuable client relationships." Confidential Information is defined in the agreement as:

> any information or compilation of information not generally known or readily ascertainable by proper means by the Company's competitors or the general public and which is proprietary to the Company including, but not limited to, trade secrets, and information contained in or relating to the Company's business techniques, marketing plans or proposals, and the Company's client lists and related information. All information which the Company identifies as being "Confidential" or "trade secrets" shall be presumed to be Confidential Information. In addition, all information not expressly identified as "confidential" or "trade secret" shall be treated as Confidential Information if, under the circumstance, Employee knows or has reason to know that the Company intends to keep that type of information confidential.

The parties agree that appellant is forbidden by state and federal law from offering or selling securities. *See* Minn. Stat. §§ 80A.56, .58 (2014); 15 U.S.C. §§ 78o(a)(1), 80b-3 (2014). In order to provide its customers with these services, appellant entered into an agreement with LPL Financial, LLC (LPL), a securities broker-dealer, in 2003. In July 2006, respondent entered into a representative agreement with LPL. Pursuant to the representative agreement, respondent sold securities on appellant's premises as an LPL representative. LPL was not responsible for paying respondent's salary or benefits, and was not obligated to provide any services to respondent unless agreed upon and paid for by appellant.

Respondent worked for appellant from 2006 to 2013. Appellant paid respondent's salary and provided respondent with office space and client contacts. During his time working for appellant, respondent sold securities and investment products to the public.

3

On October 20, 2013, respondent purchased Callahan Financial Planning Corporation (Callahan Financial), a business that sells securities and investment products to the public through a licensed broker-dealer. He resigned from Anchor Bank on October 31, 2013. Prior to resigning respondent prepared a list of his customers' telephone numbers and addresses. Within four to five days of resigning, respondent contacted or attempted to contact every client on the list. By December 2014, respondent convinced 87 of his Anchor Bank/LPL clients to transfer their accounts to Callahan Financial.

In February 2014, appellant filed a breach-of-contract claim against respondent for violating the terms of the agreement. The parties filed cross-motions for summary judgment. In March 2015, the district court denied appellant's motion for summary judgment, granted respondent's motion for summary judgment, and dismissed the case. It concluded "that the unambiguous language of the [n]on-solicitation [a]greement does not prohibit the [respondent] from soliciting the offer or sale of securities products or services that were provided by LPL." It further concluded that there was no genuine issue of material fact regarding the confidentiality provision because the client list and contact information were stored on LPL's network, and, therefore, were not confidential.

**D E C I S I O N**

We review a district court's grant of summary judgment de novo. *Dukowitz v. Hannon Sec. Servs.*, 841 N.W.2d 147, 150 (Minn. 2014). "On appeal from summary judgment, this court asks (1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law." *Knudsen v. Transp. Leasing/Contract, Inc.*, 672 N.W.2d 221, 223 (Minn. App. 2003), *review denied* (Minn. Feb. 25, 2004).

*Non-solicitation Provision*

The question on appeal is one of contract interpretation. "[W]here the intention of the parties may be gained wholly from the writing, the construction of the contract is for the court." *Donnay v. Boulware*, 275 Minn. 37, 44, 144 N.W.2d 711, 716 (1966). If "a contract is unambiguous, a court gives effect to the parties' intentions as expressed in the four corners of the instrument, and clear, plain, and unambiguous terms are conclusive of that intent." *Knudsen*, 672 N.W.2d at 223. "Whether a contract is ambiguous is a question of law that we review de novo." *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 582 (Minn. 2010). A contract is ambiguous if its language is subject to two or more reasonable interpretations. *Id.* The determination of whether a contract is ambiguous "depends on the meaning assigned to the words and phrases in accordance with the apparent purpose of the contract as a whole." *Halla Nursery, Inc. v. City of Chanhassen*, 781 N.W.2d 880, 884 (Minn. 2010). "[T]he writing must be read in light of the situation of the parties, the subject matter and purposes of the transaction." *Bussard v. Coll. of St. Thomas, Inc.*, 294 Minn.

215, 224, 200 N.W.2d 155, 161 (1972) (citing *Phoenix Publ'g Co. v. Riverside Clothing Co.*, 54 Minn. 205, 206, 55 N.W. 912 (1893)).

Appellant argues that the parties intended to prohibit respondent from soliciting clients that respondent sold securities and investment services to during his employment with appellant. It contends that securities and investment services are "product[s] or service[s] offered or sold by [appellant]" within the meaning of the agreement because the whereas clause states appellant "is engaged in the specialized and highly competitive business of selling securities and investment services."

Respondent argues that the plain and unambiguous language of the non-solicitation provision was narrowly drawn and applied only to the services and products directly offered by appellant such as checking and savings accounts and mortgages, and not to the services or products offered by LPL. He further asserts that, because federal and state law prohibit appellant from selling securities, securities and investments are not "product[s] or service[s] offered or sold by [appellant]," and, therefore, after leaving appellant he was not precluded from soliciting clients for the purpose of selling them securities. *See* Minn. Stat. §§ 80A.56, .58; 15 U.S.C. §§ 780(a)(1), 80b-3.

The district court agreed with respondent and concluded that the contract was unambiguous. However, in doing so, it impermissibly relied on extrinsic evidence. When the plain meaning of the agreement is clear and unambiguous, extrinsic evidence of the parties' intent may not be considered. *Brookfield Trade Ctr. Inc. v. Cty. of Ramsey*, 584 N.W.2d 390, 392 n.1 (Minn. 1998) ("We have determined that the contract is unambiguous and, therefore, we may not consider extrinsic evidence of the parties' intent."). The district

6

court went outside the four corners of the agreement and considered the Financial Institution Services Agreement between appellant and LPL, the language of a non-solicitation agreement offered to respondent by appellant in 2013, the representative agreement between respondent and LPL, the fact that "LPL has taken no action to enforce the non-solicitation clause in its agreement against [respondent]," and the fact that "LPL is a signatory to a Broker Protocol . . . pursuant to which it agreed that associated persons may use client names and solicit former clients when they move to a new firm."

Based on our review of the language of the agreement, it is unclear whether the parties intended the sale of securities and investment services to qualify as a "product or service offered or sold by [appellant]," and, therefore, we conclude the agreement is ambiguous. *Dykes*, 781 N.W.2d at 582. And because the interpretation of an ambiguous contract is a question of fact for the jury, we remand for trial on this issue. *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003); *see also Donnay,* 275 Minn. at 45, 144 N.W.2d at 716 ("It is generally recognized that summary judgment is not appropriate where the terms of a contract are at issue and any of its provisions are ambiguous or unclear.").

*Confidentiality Provision*

The district court granted summary judgment on appellant's claim that respondent breached the confidentiality provision of the agreement. It concluded that appellant did not raise any genuine issues of material fact because it did not present any evidence that respondent accessed anything other than LPL's network to obtain client information. It is undisputed that, in preparation for his resignation, respondent took names and telephone

7

numbers of clients he provided services to while employed with appellant; however, the district court reasoned this was not confidential information because the information was stored on LPL's server.

"Confidential Information" was defined in the agreement as "any information or compilation of information not generally known or readily ascertainable by proper means by the [appellant's] competitors or the general public and which is proprietary to [appellant] including, but not limited to . . . [appellant's] client lists and related information." The language in the agreement does not make any reference to whether information remains confidential when shared with a third party as a part of a business arrangement. Thus, there is a genuine issue of material fact regarding whether respondent took information from the company that was confidential as defined by the agreement, and summary judgment is not appropriate.

**Reversed and remanded.**