OSTEN MEAT COMPANY v FIRST OF AMERICA BANK—
SOUTHEAST MICHIGAN, NA

Docket No. 145686. Submitted December 21, 1993, at Detroit. Decided
June 20, 1994, at 9:30 A.M. Leave to appeal sought.

Osten Meat Company brought an action in the Wayne Circuit
Court against First of America Bank-Southeast Michigan, N.A.,
alleging wrongful dishonor of a letter of credit issued at the
request of Swenehart's Zero Foods, Inc., in favor of the plaintiff
and providing that the defendant would honor sight drafts
accompanied by unpaid invoices from the plaintiff to Swene-
hart's Zero Foods. The court, Thomas J. Foley, J., granted
summary disposition for the defendant, ruling that the defen-
dant properly dishonored the draft because it was accompanied
by invoices marked "paid," notwithstanding the fact that the
draft was also accompanied by an affidavit by the president of
the plaintiff stating that the invoices were unpaid. The plaintiff
appealed.

The Court of Appeals *held:*

1. Strict compliance with the terms and conditions of a letter
of credit is a requirement for honoring a presentment under the
letter of credit.

2. The defendant properly refused to honor the draft on the
letter of credit at issue because the draft was accompanied by
invoices that were marked "paid" and therefore did not comply
strictly with the requirement of the letter of credit that in-
voices be unpaid.

Affirmed.

BANKS AND BANKING — LETTERS OF CREDIT — STRICT COMPLIANCE.

A presentment under a letter of credit must comply strictly with
the terms and conditions of the letter of credit; a bank does not
incur liability for dishonoring a presentment that does not
comply strictly with the terms and conditions of the letter of
credit.

REFERENCES

Am Jur 2d, Letters of Credit, and Credit Cards §§ 10, 19-21.
What constitutes compliance of documents presented with terms of
letter of credit so as to require honor of draft under UCC § 5-114.
8 ALR5th 463.

*Jacob & Weingarten, P.C.* (by *Howard S. Sher* and *Noah Eliezer Yanich*), for the plaintiff.

*Jaffe, Raitt, Heuer & Weiss* (by *Brian G. Shannon, Melanie LaFave,* and *Daniella Saltz*), for the defendant.

Before: SAWYER, P.J., and CORRIGAN and T. L. BROWN,* JJ.

SAWYER, P.J. Plaintiff appeals from a judgment of the circuit court entered in favor of defendant on plaintiff's claim against defendant for wrongful dishonor of a letter of credit. We affirm.

The essential facts are not in dispute. On May 17, 1989, at the request of its customer, Swenehart's Zero Foods, Inc.,[1] defendant issued an irrevocable stand-by letter of credit for the benefit of plaintiff. The letter of credit provided that defendant would honor one or more sight drafts, not exceeding $150,000 in total, accompanied by:

1. Copy of unpaid invoice(s) from May 16, 1989 or subsequently.

2. An Affidavit purportedly executed by an officer of Osten Meat Co. reading exactly as follows:

Reference is made to Letter of Credit No. 65469 issued by First of America Bank-Southeast Michigan, N.A. in favor of Osten Meat Co.

The undersigned deposes and says:

1. Sweneharts Zero Foods has failed to pay in full for the shipment of merchandise described in the attached invoice(s).

2. The amount of the attached sight draft is not in excess of the amount owed to Osten Meat Co. by Sweneharts Zero Foods.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Third-party defendant Laker is apparently the father-in-law of a principal of Swenehart's.

The letter of credit also provided that the original of the letter of credit must be submitted whenever a partial draw on the letter of credit was requested.

On or about January 25, 1990, plaintiff requested a full draw of $150,000 pursuant to the letter of credit. With the request, plaintiff submitted: 1. A sight draft in the amount of $150,000. 2. Copies of invoices from plaintiff to Swenehart's after May 16, 1989. 3. An affidavit of Werner Osten, the president of plaintiff.

In a letter dated February 5, 1990, defendant advised plaintiff that it would not honor the letter of credit because of the following discrepancies:

> 1) Original Letter of Credit No. 65469 not presented as required.
> 2) Documents inconsistent with one another:
> Invoices reference Letter of Credit Number different than sworn affidavit.
> 3) Invoices  57040-00  $6,076.69  marked  PAID 48439-00 $24,384.26 marked PAID, Check #2248 55922-00 $7,000.00 marked PAID, Personal Money Order #501548

Plaintiff did not resubmit documents before the letter of credit expired.

This dispute concerns whether the inconsistencies in the documentation supplied by plaintiff in support of its draw on the letter of credit were sufficient to warrant defendant's dishonoring the draft. The trial court concluded that it did, while plaintiff obviously argues that the documentation was sufficient to warrant payment of the draft. To resolve this dispute, we must first determine the Michigan standard for determining whether documents submitted in conjunction with a draw on a letter of credit are sufficient. Two standards have

emerged in other jurisdictions, namely, (1) strict compliance with the terms of the letter of credit and (2) mere substantial compliance. This appears to present a question of first impression in Michigan. However, we are persuaded that defendant is correct that we should follow the rule of strict compliance.

A letter of credit is "an engagement by a bank . . . made at the request of a customer . . . that the [bank] will honor drafts or other demands for payment upon compliance with the conditions specified in the credit." UCC 5103(1)(a); MCL 440.5103(1)(a); MSA 19.5103(1)(a).

A letter of credit is a contract between the bank and the beneficiary of the credit that is separate and distinct from the commercial contract between the beneficiary, usually the seller, and the bank's customer, usually the buyer. *Marino Industries Corp v Chase Manhattan Bank, NA,* 686 F2d 112, 115 (CA 2, 1982). The letter of credit is not tied to or dependent upon the underlying commercial transaction, and in determining whether to pay, the bank looks only at the letter and the documentation the beneficiary presents to determine whether the documentation meets the requirements in the letter. *Id.*

There is no Michigan statute or case law that illuminates what standard is to be used in determining whether documents submitted by a beneficiary are in compliance with the terms of the letter of credit. Nor is there a standard set forth in the Uniform Customs and Practice for Documentary Credits (1983 rev), International Chamber of Commerce, Brochure No. 400 (UCP), which frequently governs letters of credit and which does so in this case. Articles 15 and 16(b) of the UCP provide only:

Article 15

Banks must examine all documents with reasonable care to ascertain that they appear on their face to be in accordance with the terms and conditions of the credit. . . .

Article 16

\*   \*   \*

b. If, upon receipt of the documents, the issuing bank considers that they appear on their face not to be in accordance with the terms and conditions of the credit, it must determine, on the basis of the documents alone, whether to take up such documents, or to refuse them and claim that they appear on their face not to be in accordance with the terms and conditions of the credit.

Case law outside Michigan is split on the issue. The majority position is that the standard is one of strict compliance: the papers, documents, and shipping descriptions must be as stated in the letter of credit. *Venizelos, SA v Chase Manhattan Bank,* 425 F2d 461 (CA 2, 1970), and *Armac Industries, Ltd v Citytrust,* 203 Conn 394; 525 A2d 77 (1987). This standard leaves "no room for documents which are almost the same, or which will do just as well." *Courtaulds North America, Inc v North Carolina Nat'l Bank,* 528 F2d 802, 806 (CA 4, 1975), quoting from *Equitable Trust Co of New York v Dawson Partners, Ltd,* 27 Lloyd's List Law Rpts 49, 52 (1926).

A minority of cases do hold that a beneficiary's reasonable or substantial performance of the letter's requirements will do. *Banco Espanol de Credito v State Street Bank & Trust Co,* 385 F2d 230, 234 (CA 1, 1967), cert den 390 US 1013 (1968), and *Crocker Commercial Services, Inc v Countryside Bank,* 538 F Supp 1360 (ND Ill, 1981). We are persuaded that the majority position that a letter of credit must be strictly construed and performed

precisely in accordance with its terms is the appropriate rule and should be followed in Michigan.

In a letter of credit transaction, the issuing bank's duty with respect to a letter of credit is purely ministerial. The bank's representative, who knows nothing of the parties, the underlying transaction, or the practices of the industry concerned, checks presented documents carefully against the requirements of the credit. Under a strict compliance standard, if the documents comply, the draft is paid. If there is a discrepancy between the requirements of the letter of credit and the submitted documents, the draft is not paid and the beneficiary is notified of the reason for the dishonor. The beneficiary then has the right to resubmit the correct documents before the credit expires.

A substantial-compliance standard would impose a duty on the bank to investigate the underlying transaction whenever a discrepancy is found between the documents submitted and the credit to determine whether a discrepancy is significant. Such a duty would negate the credit's advantages, that is, its independence from the underlying transaction and the predictability and swiftness of the determination to honor or dishonor a draw request.

As John Dolan advises in The Law of Letters of Credit (2d ed, 1991), ¶ 6.02 at p 6-8:

> Analysis of the minority rule indicates that it lends itself well to the courtroom setting of legal briefs, oral arguments, and expert testimony on industry practices and to lengthy review of prior transactions. It does not lend itself well to the bank letter of credit department, where document examiners must review the documents against the credit and must decide promptly whether to honor the beneficiary's draft. The kind of inquiry that

the minority rule commands takes more time and requires more legal analysis than document examiners can give, as well as more legal analysis than the credit transaction can afford.

Furthermore, we are persuaded that the strict-compliance standard is not an unduly harsh burden for the beneficiary to meet. As Dolan, *supra* at 6-8, states, the capabilities of modern communications allow beneficiaries to more easily meet the strict compliance standard than may have been true in the past.

> The development of wire communications diminishes the efficacy of the argument that commercial parties cannot live with the strict compliance rule. Freight forwarders, trading company subsidiaries of bank holding companies, and importers themselves have begun the process of modernizing the production of documents called for by letters of credit. Most document discrepancies arise in commercial credits, particularly in bills of lading. By permitting parties to generate bills and similar documents by wire, these efforts at modernization permit a beneficiary or his agent to correct defects promptly. It would be unfortunate if courts reject the strict compliance rule at a time when commercial practices are rendering it a simple rule for the commercial parties to observe.

Indeed, ultimately, a strict-compliance standard should prove to make the processing of letter of credit transactions more efficient rather than less because a beneficiary will know precisely what documentation must be submitted in support of the draw on the letter of credit and may promptly correct any defects found in those documents. On the other hand, accepting a mere "substantial compliance" standard would cause the waters to be muddied. Each transaction would open itself to

questions by the issuer of the letter of credit whether the documentation submitted was sufficient. This would result in delays because it would not be sufficient to answer the question whether there is strict compliance with the terms and conditions of the letter of credit. Rather, a determination would have to be made whether the less-than-full compliance would nevertheless be sufficient, a question that might often require the solicitation of legal advice. Similarly, such disputes might often end in litigation, further impairing the efficacy of letter of credit transactions. In the long run, we are persuaded that the majority rule of strict compliance makes sense and will make the handling of letter of credit transactions more efficient, both from a commercial and a legal viewpoint.

Accordingly, for the above reasons, we choose to follow the rule that strict compliance with the terms and conditions of a letter of credit is required.

Having resolved that the appropriate standard is one of strict compliance, we turn to the question whether the reasons cited by defendant for refusing to honor the sight draft do, in fact, demonstrate that plaintiff failed to strictly comply with the terms of the letter of credit. With respect to the first reason cited by defendant, the failure of plaintiff to submit the original letter of credit, defendant appears to concede in its brief on appeal that that is an insufficient basis to have dishonored the letter of credit in the case at bar. Plaintiff sought a full draw on the letter of credit and the terms of the letter of credit only required submission of the letter of credit upon either a partial draw or a cancellation of the letter of credit.

However, defendant's dishonor of the sight draft was proper if any of the defects cited as reasons

for the dishonor are appropriate. Accordingly, we must turn to the other two reasons cited by defendant in its rejection of the sight draft.

The third reason cited by defendant for dishonoring the draft was that certain invoices submitted with the draft had been marked paid, while the terms of the letter of credit allowed for a draft to be made only for payment of unpaid invoices. Thus, defendant argues, the representation in the affidavit that the invoices were unpaid and the notation on the invoices that they were, in fact, paid created an inconsistency that warranted dishonoring the draft.

Plaintiff had submitted twenty-nine invoices, three of which were marked "Paid," invoices 57040-00, 55922-00, and 48439-00. Invoice 48439-00 had the further notation "Check #2248" with the figure 30384.26 below this notation. Attached to this invoice was a copy of Sweneharts Zero Lockers, Inc., check 2248, made out to Osten Meat Co. in the amount of $30,384.26. The check was stamped "NSF" and "DO NOT PRESENT AGAIN."

The total amount of the twenty-six unpaid invoices was approximately $145,000, less than the amount of the $150,000 draft. Thus, the properly presented invoices cannot be considered alone because the draft would be defective under the terms of the letter of credit inasmuch as it would be for an amount in excess of the amount of the unpaid invoices. On appeal, the focus is on Invoice 48439-00, in the amount of $24,384.26, and for which a copy of an NSF check was attached, because that invoice, in connection with the other twenty-six unpaid invoices, would, if it were acceptable, be sufficient to raise the total of the unpaid invoices

to about the $150,000 amount, notwithstanding the two remaining nonconforming invoices.[2]

The trial court, in granting defendant's motion for summary disposition, stated:

> There isn't any question but that there were, in fact, discrepancies. We're not here to argue that they could not have been corrected, that they could not have been discovered with investigation. They could have been, but it would have required investigation, and I don't find that the bank has this burden, not in the law as I see it.
>
> If you place that burden on the bank, you have no more letters of credit. They cannot possibly operate because of the multitude and verify actions in these contracts—in these contractual relationships between large companies.
>
> \*   \*   \*
>
> I think there was sufficient variance to put the bank on notice that there was something wrong and they had to be assured by a proper presentation. It's just that basis, and I think you're entitled to summary disposition.

Proper presentment by a beneficiary of documents required under a letter of credit occurs when the beneficiary strictly complies with the terms of the credit. *First Bank of Rowlett v Paris Savings & Loan Ass'n,* 756 SW2d 329; 7 UCC Rep Serv 2d 166 (Tex App, 1988). A beneficiary is in strict compliance if there is only a misspelling or other flyspeck discrepancy as long as the deviation from the letter's terms could not possibly have misled any issuer. *Flagship Cruises, Ltd v New England Merchants Nat'l Bank of Boston,* 569 F2d

[2] Documentation in support of a sight draft can be considered sufficient, even if there are objections to some of the documentation, if the total amounts of the documents to which there were no valid objections would still be in excess of the amount of the draft. *Atari, Inc v Harris Trust & Savings Bank,* 599 F Supp 592, 599 (ND Ill, 1984), rev'd in part on other grounds 785 F2d 312 (CA 7, 1986).

699, 705 (CA 1, 1978), *Tosco Corp v FDIC,* 723 F2d 1242, 1247-1248 (CA 6, 1983), and *US Industries, Inc v Second New Haven Bank,* 462 F Supp 662, 665 (D Conn, 1978).

Plaintiff cites *Atari, Inc v Harris Trust & Savings Bank,* 599 F Supp 592 (ND Ill, 1984), rev'd in part on other grounds 785 F2d 312 (CA 7, 1986), and *American Airlines, Inc v FDIC,* 610 F Supp 199 (D Kan, 1985), to support its argument that the submission of Invoice 48439-00, together with a copy of a bounced check, strictly complied with the requirement of the letter of credit that copies of unpaid invoices be submitted.

While standing for the proposition that documents presented by a beneficiary can have a slight discrepancy and remain in strict compliance with the terms of the credit, the opinion in *American Airlines,* is off point because it discusses a circumstance where there was a typographical error in the sight draft's reference to the letter of credit number.

*Atari* is factually closer to the instant case. In *Atari,* the beneficiary submitted a certificate stating that enclosed invoices were due and unpaid along with invoices, some of which were stamped "Void." The issuing bank dishonored the draft request because the certificate and the invoices were inconsistent. The United States District Court held that the beneficiary's submission of void invoices was not inconsistent with the beneficiary's certificate because, in each instance where the beneficiary included a voided invoice, the beneficiary also presented the correcting debit and credit memorandums together with the final corrected invoice.

While the facts in *Atari* initially resemble the facts in the instant case, an important distinction is that the beneficiary in *Atari* submitted a cor-

rected invoice that was consistent with the certificate's statement that the invoice be due and unpaid. In the instant case, plaintiff did not submit a corrected invoice indicating that the amount was unpaid.

Defendant cites the opinion in *Courtaulds, supra,* which is factually closer to this case and which controls the result in this case. In *Courtaulds,* the letter of credit required the beneficiary to submit invoices stating that the packages shipped contained one hundred percent acrylic yarn. The beneficiary submitted invoices describing the goods as "Imported Acrylic Yarn," to each of which was stapled a packaging list that indicated that the goods were one hundred percent acrylic yarn. The bank refused to honor the letter of credit. The United States Court of Appeals held that, although the packing lists attached to invoices disclosed on their faces that the packages contained one hundred percent acrylic yarn, the lists could not be considered part of the invoice by reason of their being appended to it, nor could the invoices be read as one with the lists.

*Courtaulds* clearly held that invoices submitted by the beneficiary cannot be read in conjunction with other submissions but must comply with the requirements of the letter of credit on their face. Under this standard, plaintiff's submission of Invoice 48439-00 failed to comply with the requirements of the letter of credit because on its face it was marked "Paid." Because the invoice, on its face, did not strictly comply with the letter of credit, the bank did not wrongfully dishonor plaintiff's draft. Plaintiff had the option of submitting a corrected invoice, but chose not to do so.

Furthermore, while it might be argued that the sworn statement in the affidavit submitted with the documentation that all the attached invoices

were, in fact, unpaid should be given precedence over an unsworn notation on the invoice that it had been paid, such discrepancies are nevertheless sufficient to warrant rejection of the documentation. The letter of credit adopted by reference the UCP, *supra.* Article 15 of the UCP provides as follows:

> Banks must examine all documents with reasonable care to ascertain that they appear on their face to be in accordance with the terms and conditions of the credit. Documents which appear on their face to be inconsistent with one another will be considered as not appearing on their face to be in accordance with the terms and conditions of the credit.

Thus, the letter of credit, through its adoption of the UCP, requires that all documents submitted with the draft in support of the letter of credit be consistent on their face and that the submission of inconsistent documents is not in accordance with the terms and conditions of the letter of credit. Thus, the letter of credit did require that all documentation being submitted be consistent with each other on their face. Because the notations on the invoices indicating that they had been paid were inconsistent with the statement in the affidavit that all the attached invoices were unpaid, as well as being inconsistent with the requirements of the letter of credit that the invoices be unpaid, those invoices do not conform with the consistency requirement found in article 15. Accordingly, they did not strictly comply with the terms and conditions of the letter of credit, and defendant acted properly in refusing to consider those invoices in determining whether there was compliance with the letter of credit.

Moreover, the mere attaching of a copy of a returned check to the invoice in question on appeal is not sufficient to rehabilitate that invoice. Rather, attaching a copy of an NSF check does not cure the inconsistency on the face of the invoice caused by having it marked "paid." This is particularly true inasmuch as the amount of the NSF check was different than the amount of the invoice to which it was attached.

What plaintiff should have done was to generate new invoices that had not been marked paid and, if in fact those invoices remained unpaid, submit those conforming invoices as part of the documentation in support of the sight draft drawn against the letter of credit. Plaintiff, however, failed to do that.

In light of the fact that defendant properly dishonored the sight draft for the above reason, we need not consider the second reason stated for dishonor (incorrect reference to the letter of credit number on the invoices).

For the above reasons, we conclude that the trial court correctly determined that plaintiff failed to strictly comply with the terms and conditions of the letter of credit and, therefore, defendant rightfully dishonored the sight draft.

Finally, plaintiff raises two arguments concerning the trial court's rejection of plaintiff's claim of anticipatory repudiation. However, it does not appear that plaintiff has properly preserved those issues for review inasmuch as a claim of anticipatory repudiation was not included in plaintiff's complaint. Accordingly, we decline to address any issue involving a claim of anticipatory repudiation.

Affirmed. Defendant may tax costs.