**FIFTH THIRD BANK, Appellant–Defendant,**

v.

**KOHL'S INDIANA, L.P., and Kohl's Department Store, Appellees–Plaintiffs.**

No. 82A01–0906–CV–272.

Court of Appeals of Indiana.

Dec. 18, 2009.

Terry G. Farmer, Catherine A. Nestrick, Bamberger, Foreman, Oswald & Hahn, LLP, Evansville, IN, Attorneys for Appellant.

Peter A. Velde, Eric D. Johnson, Kightlinger & Gray, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Fifth Third Bank ("Fifth Third") appeals from the trial court's grant of summary judgment in favor of Kohl's Indiana, L.P. and Kohl's Department Store (collectively "Kohl's Indiana"). In its complaint, Kohl's Indiana sought, in relevant part, a judgment requiring the Evansville–Vanderburgh Area Plan Commission ("the Commission") to assign to Kohl's Indiana the proceeds from letters of credit that Fifth Third had issued to the Commission as beneficiary. Fifth Third presents two issues for our review:

1. Whether the trial court erred when it concluded that letters of credit Fifth Third issued to the Commission should be treated as performance bonds.

2. Whether the trial court erred when it concluded that Kohl's Indiana was a third party beneficiary of the letters of credit.

We reverse and remand for further proceedings.[1]

## FACTS AND PROCEDURAL HISTORY

In February 2005, Kohl's Indiana and Dennis Owens entered into an Operation and Easement Agreement whereby Owens agreed to construct a new Kohl's Department Store as part of the Carpentier Creek Pavilion Subdivision development ("the Subdivision") in Evansville. Kohl's Indiana and Owens also entered into a Site Development Agreement, which provided in part that if Owens failed to perform the site improvement work to Kohl's Indiana's satisfaction, Kohl's Indiana had the option to take over the project and to charge Owens all expenses incurred to complete the subdivision.

The Commission approved the Operation and Easement Agreement following a hearing. The Commission, which was responsible for making certain that the infrastructure improvements within the entire Subdivision were done properly, required Owens to provide letters of credit. Accordingly, Owens obtained four letters of credit from Fifth Third "in order to assure the proper development of roads, bridges and other infrastructure within the Carpentier Creek Pavilion Subdivision." Appellant's App. at 66. The letters of credit state as follows:

ISSUING BANK:

FIFTH THIRD BANK, (SOUTHERN INDIANA)

BENEFICIARY:

EVANSVILLE–VANDERBURGH AREA PLAN COMMISSION

ROOM 312 CIVIC CENTER COMPLEX

EVANSVILLE, IN 47708

APPLICANT:

DENNIS OWENS

1101 NORTH 4th AVENUE

EVANSVILLE, IN 47710

* * *

RE: CARPENT[I]ER CREEK PAVILION

WE HEREBY OPEN OUR IRREVOCABLE LETTER OF CREDIT IN YOUR FAVOR FOR THE ACCOUNT OF DENNIS OWENS FOR AN AMOUNT NOT TO EXCEED ... ($47,284.65) [2] AVAILABLE BY YOUR ONE OR MORE CLEAN DRAFTS DRAWN AT SIGHT ON US.

DRAFTS MUST BE MARKED "DRAWN UNDER FIFTH THIRD BANK, (SOUTHERN INDIANA) LETTER OF CREDIT NO. CIS403248, DATED JANUARY 26, 2005,["] AND ACCOMPANIED BY A SIGNED STATEMENT OF THE [COMMISSION] THAT DENNIS OWENS HAS FAILED TO MEET STATUTORY AND ORDINANCE REQUIREMENTS AND/OR THE STIPULATIONS OF PRIMARY APPROVAL WITH REGARD TO BASIC IMPROVEMENTS.

THE AGGREGATE AMOUNT OF $47,284.65 MAY BE PERIODICALLY REDUCED UPON OUR RECEIPT OF A SIGNED STATEMENT FROM THE [COMMISSION] CERTIFYING THAT "WORK ON ONE OR MORE OF THE PUBLIC SUBDIVISION IMPROVEMENTS HAS BEEN ACCEPTED

---

1. We heard oral argument in this case on December 2, 2009.

2. Each letter of credit is for a different amount, ranging from $47,284.65 up to $230,245.31, but the letters of credit are otherwise identical.

AND/OR APPROVED BY THE DEPARTMENT HAVING THE AUTHORITY TO ACCEPT AND/OR APPROVE THE IMPROVEMENT(S), AND THAT DUE TO SUCH ACTION, THIS IRREVOCABLE LETTER OF CREDIT MAY BE REDUCED BY (AMOUNT TO BE SPECIFIED) BASED ON THE FUNDS SPECIFIED IN THE COST ESTIMATES FOR CARPENT[I]ER CREEK PAVILION.["]

THIS ORIGINAL LETTER OF CREDIT MUST BE PRESENTED AT TIME OF DRAW. WE HEREBY AGREE WITH YOU THAT ALL DRAFTS DRAWN IN COMPLIANCE WITH THE TERMS AND CONDITIONS OF THIS IRREVOCABLE LETTER OF CREDIT WILL BE DULY HONORED ON PRESENTATION AND DELIVERY OF THE DOCUMENTS SPECIFIED ABOVE TO FIFTH THIRD BANK ... ON OR BEFORE JANUARY 26, 2006.

THE LIABILITY AND OBLIGATIONS OF FIFTH THIRD BANK FOR THIS LETTER OF CREDIT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF INDIANA. IN THE EVENT OF ANY DISPUTE OR CONTROVERSY ARISING OUT OF THE LETTER OF CREDIT, WE AGREE THE FORUM FOR ANY CAUSE OF ACTION FILED BY ANY PARTY SHALL BE VANDERBURGH COUNTY.

*Id.* at 309–10.

On February 13, 2006, Kohl's Indiana filed a complaint alleging in relevant part that Owens had "breached the contract and failed to perform in numerous particulars as required by the Site Development Agreement[.]" *Id.* at 52. Kohl's Indiana claimed damages in the amount of $3,508,315 and asked the trial court to order the Commission to "draw on each and every one of [the] Letters of Credit to their full extent." *Id.* at 66. Further, Kohl's Indiana asked the trial court to order the Commission to assign the proceeds from the letters of credit to Kohl's Indiana.

Fifth Third filed its Answer and Counter–Claim against Owens for "breach of promissory notes and foreclosure of mortgages." *Id.* at 184. And Fifth Third subsequently moved to intervene as a defendant in those counts relevant to this appeal, which were against the Commission. The trial court granted the motion to intervene. Fifth Third then moved for summary judgment on the issue of whether Kohl's Indiana was entitled to benefit from the proceeds of the letters of credit. Following a hearing, the trial court entered summary judgment in favor of Kohl's Indiana as follows:

> the Court now being duly advised finds that there is no genuine issue as to any material facts, and that Kohl's is entitled to Summary Judgment as a matter of law. *The Court specifically finds that the "Letter of Credit" herein should be treated as a performance bond, pursuant to the reasoning stated in Comment 6 of I.C. [§ ] 26–1–5.1–102. The Court further finds that Kohl's may make a claim against the proceeds from the "Letter of Credit" as a third-party beneficiary.*
>
> IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that Summary Judgment be, and the same is[,] hereby entered in favor of Kohl's and against Fifth Third Bank with regard to [the] Letter of Credit issue.
>
> IT IS FURTHER ORDERED that there is no just reason for delay and that judgment shall be entered as to this issue.

*Id.* at 44–45 (emphasis added).[3] This appeal ensued.

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, we apply the same standard applicable to the trial court. *Wagner v. Yates,* 912 N.E.2d 805, 808 (Ind.2009). Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). We do not weigh the evidence, but will consider the facts in the light most favorable to the non-moving party. *Wagner,* 912 N.E.2d at 808. We must reverse the grant of a summary judgment motion if the record discloses an incorrect application of the law to those facts. *Id.*

### Issue One: Letters of Credit

■ Fifth Third first contends that the trial court erred when it concluded that the letters of credit should be treated as performance bonds. Letters of credit are governed by Article 5 of the Uniform Commercial Code as codified at Indiana Code Sections 26–1–5.1–101 to–118. A letter of credit is defined as a definite undertaking that satisfies the requirements of Indiana Code Section 26–1–5.1–104 by an issuer to a beneficiary at the request or for the account of an applicant or, in the case of a financial institution, to itself or for its own account, to honor a documentary presentation by payment or delivery of an item of value. Ind.Code § 26–1–5.1–102(a)(10). And Indiana Code Section 26–1–5.1–104 provides that a letter of credit may be issued in any form that is a record and is authenticated by a signature or in accordance with the agreement of the parties or

the standard of practice referred to in Indiana Code Section 26–1–5.1–108(e).

Here, the trial court concluded that "the 'Letter of Credit' herein should be treated as a performance bond, pursuant to the reasoning stated in Comment 6 of I.C. [§ ] 26–1–5.1–102." Appellant's App. at 45. The relevant portion of Comment 6 to Section 102 provides:

> The label on a document is not conclusive; certain documents labeled "guarantees" in accordance with European (and occasionally, American) practice are letters of credit. On the other hand, even documents that are labeled "letter of credit" may not constitute letters of credit under the definition in Section 5–102(a). *When a document labeled a letter of credit requires the issuer to pay not upon the presentation of documents, but upon the determination of an extrinsic fact such as [an] applicant's failure to perform a construction contract, and where that condition appears on its face to be fundamental and would, if ignored, leave no obligation to the issuer under the document labeled letter of credit, the issuer's undertaking is not a letter of credit.* It is probably some form of suretyship or other contractual arrangement and may be enforceable as such. See Sections 5–102(a)(10) and 5–103(d). Therefore, undertakings whose fundamental term requires an issuer to look beyond documents and beyond conventional reference to the clock, calendar, and practices concerning the form of various documents are not governed by Article 5. Although Section 5–108(g) recognizes that certain nondocumentary conditions can be included in a letter of

3. On appeal, Kohl's Indiana contends that this appeal should be dismissed because the summary judgment entry is not a final, appealable order. But the trial court's use of the "magic language," namely, that there is

no just reason for delay and that judgment shall be entered, satisfies Indiana Trial Rule 56(C). *See Ramco Indus., Inc. v. C & E Corp.,* 773 N.E.2d 284, 288 (Ind.Ct.App.2002).

credit without denying the undertaking the status of letter of credit, that section does not apply to cases where the non-documentary condition is fundamental to the issuer's obligation. . . .

(Emphasis added.)

On appeal, Fifth Third contends that the letters of credit in this case are clearly labeled as such and require only that the Commission present documents to draw on the credits. Accordingly, Fifth Third maintains that they are letters of credit as a matter of law and not performance bonds. We must agree.

Here, each letter of credit requires the Commission to present to Fifth Third "a signed statement that Dennis Owens has failed to meet statutory and ordinance requirements and/or the stipulations of primary approval with regard to basic improvements." *See* Appellant's App. at 309. Whether Owens has failed to meet the requirements or stipulations is to be determined by the Commission, not Fifth Third. Thus, Fifth Third is not required as the issuer to make "the determination of an extrinsic fact" before the Commission can draw on each letter of credit, and the exception set out in Comment 6 does not apply here. *See* Ind.Code § 26–1–5.1–102 cmt. 6. Indeed, at oral argument, Kohl's Indiana conceded that the letters of credit issued by Fifth Third are letters of credit and not performance bonds.[4]

As Professors James J. White and Robert S. Summers have acknowledged, "there is an irresistible urge to analogize the letter of credit to other legal arrangements [such as performance bonds], and this has led to error." 3 James J. White & Robert S. Summers, *Uniform Commercial Code* § 26–2137 (5th ed.2008). "The prime purpose of the drafters of Article 5 was to 'set a substantive theoretical frame that describes the function and legal nature of letters of credit,' a framework independent of contract, of guaranty, of third party beneficiary law, of the law of assignment, and of negotiable instruments." *Id.* The unique and rigid nature of letters of credit is what makes them the invaluable tools that they are in facilitating business transactions. As White and Summers have observed, "a letter of credit is a letter of credit."[5] *Id.* at 144.

Here, the letters of credit issued by Fifth Third are letters of credit as a matter of law. We hold that the trial court erred when it concluded that the letters of credit should be treated as performance bonds. Kohl's Indiana is not entitled to summary judgment on this issue.

### Issue Two: Third Party Beneficiary

Fifth Third next contends that the trial court erred when it concluded that Kohl's Indiana was a third party beneficiary of the letters of credit. Fifth Third asserts that Article 5, which governs letters of credit, does not provide for third party beneficiaries. In support of that contention, Fifth Third cites to *Arbest Construction Co. v. First National Bank & Trust Co. of Oklahoma City,* 777 F.2d 581 (10th Cir.1985). In *Arbest,* the United States Court of Appeals for the Tenth Circuit

---

4. At oral argument, Kohl's Indiana asserted that the trial court erred when it granted summary judgment in its favor. In particular, Kohl's Indiana argued that the trial court should not have permitted Fifth Third to intervene and, in the alternative, that the summary judgment entry goes beyond the relief that Kohl's Indiana was seeking. But we need not address those issues for purposes of

this appeal. We note, however, that our review of the record reveals that Kohl's Indiana has not preserved the issue of Fifth Third's motion to intervene for appellate review.

5. "As Bishop Butler once said, 'Everything is what it is and not another thing.'" White & Summers § 26–2 at 144.

interpreted and applied the Oklahoma statutes codifying Article 5 of the UCC regarding whether an alleged third party beneficiary of a letter of credit could enforce said letter of credit. The court held that:

Oklahoma has adopted the Uniform Commercial Code (U.C.C.) provisions on letters of credit. Okla. Stat. Ann. tit. 12A §§ 5–101 to 5–117. Under those provisions, a letter of credit involves three parties: (1) an issuer (generally a bank) who agrees to pay conforming drafts presented under the letter of credit; (2) a bank customer or "account party" who orders the letter of credit and dictates its terms; and (3) a beneficiary to whom the letter of credit is issued, who can collect monies under the letter of credit by presenting drafts and making proper demand on the issuer. See id. § 5–103(1). A letter of credit thus involves three relationships—between the issuer and the account party, the issuer and the beneficiary, and the account party and the beneficiary (this last relationship being the underlying business deal giving rise to the issuance of the letter of credit). The simple result is that the issuer substitutes its credit, preferred by the beneficiary, for that of the account party. The arrangement facilitates commercial transactions.

The three letter of credit relationships are legally distinct. See, e.g., Barclays Bank D.C.O. v. Mercantile National Bank, 481 F.2d 1224, 1238–39 (5th Cir. 1973); Venizelos, S.A. v. Chase Manhattan Bank, 425 F.2d 461, 464–65 (2d Cir. 1970). Further, the relationship between the issuer and the beneficiary is statutory, not contractual. As Professors White and Summers note:

"The obligations, particularly those of an issuer to a beneficiary, that arise under a letter of credit are not exclusively contractual in nature, and it is unfortunate that some of the Code comments suggest as much. It is true that the issuer's customer and the beneficiary will ordinarily have a contract, for instance, for the purchase and sale of goods, for the construction of a ship, or the like, and it is also true that the issuer and the customer will ordinarily have a contract between them whereby the customer pays a fee and the issuer issues the letter of credit. *But the resulting letter of credit is not itself a contract, and the issuer's obligation to honor drafts is not, strictly speaking, a contractual one to the beneficiary. The beneficiary does not enter into any agreement with the issuer. Indeed, prior to issuance of the letter of credit, issuer and beneficiary may be wholly unknown to each other. Yet once the letter of credit is established, the issuer becomes statutorily obligated to honor drafts drawn by the beneficiary that comply with the terms of the credit.*"

J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code § 18–2, at 711 (2d ed.1980) (footnotes omitted) (emphasis in original) (hereinafter White & Summers).

Under the U.C.C. framework an issuer like the bank has only two narrow groups of duties. First, it has statutory and contractual duties to its customer, the account party. See Okla. Stat. Ann. tit. 12A § 5–109. Second, it has purely statutory duties to the beneficiary. See id. § 5–114. These latter duties are especially limited. An issuer must honor a draft accompanied by proper demand. Id. It may ignore any improper demand. Id. And no provision in the Oklahoma statutes imposes duties on the issuer toward third parties who are neither

*named by the letter of credit nor proper assignees of the letter of credit . . . .*

This rule limiting the issuer's duties is grounded in policy. The issuer is immune from responsibilities to police the underlying transaction because it lacks control over it, or possibly even knowledge of it. *See Bank of Newport v. First National Bank,* 687 F.2d at 1261–62. The issuer similarly lacks control over the selection of the beneficiary. *This lack of control gives the letter of credit its commercial vitality.* The issuer can write a letter of credit pursuant to the instructions of its credit-worthy customer without investigation of the underlying transaction. *Id.* When and if proper demand is made, it pays, again without investigation. The broad right of the issuer to ignore improper demand is a corollary to the strict duty of the issuer to honor proper demand.

\* \* \*

We have found no decision contradicting this statutory structure and holding that unnamed, nonassignee third parties, such as the plaintiff subcontractors, can make a proper demand on a letter of credit. The cases plaintiffs cite are inapposite. Under the Oklahoma statutes, plaintiffs received no rights against the bank as issuer.

(Emphases added, footnotes omitted.)

▬ Indeed, Indiana Code Section 26–1–5.1–103(d) states that the rights and obligations of an issuer (here, Fifth Third)

to a beneficiary (here, the Commission) under a letter of credit are independent of the existence, performance, or nonperformance of a contract or arrangement out of which the letter of credit arises or which underlies it, including contracts or arrangements between the issuer and the applicant and between the applicant and the beneficiary. Under Section 103(d), the issuer of a letter of credit has no duty to a third party not named as a beneficiary or properly designated as an assignee. We adopt the reasoning in *Arbest* and hold that Kohl's Indiana is not a third party beneficiary of the letters of credit issued by Fifth Third.[6]

## CONCLUSION

We hold that the trial court erred when it concluded that the letters of credit here are to be "treated as" performance bonds and that Kohl's Indiana is a third party beneficiary of the letters of credit. Fifth Third, as issuer of the letters of credit, is obligated to pay under the terms of the letters of credit only if and when the Commission should present the letters and deliver the necessary documentation. Kohl's Indiana does not have any rights derived from the letters of credit. We note that Kohl's Indiana claims that its litigation against the Commission is ongoing. If Kohl's Indiana were to prevail in that litigation, then the Commission might draw on the letters of credit to satisfy a judgment. Regardless, we are not asked to consider and express no opinion concern-

---

**6.** Even applying contract principles, Kohl's Indiana is not a third party beneficiary of the letters of credit. In order to enforce a contract by virtue of being a third party beneficiary, a claimant must show: a clear intent by the actual parties to the contract to benefit the third party; a duty imposed on one of the contracting parties in favor of the third party; and performance of the contract terms is necessary to render the third party a direct bene-

fit intended by the parties to the contract. *Id.* During oral argument, Kohl's Indiana conceded that the evidence does not show an intent by the parties to make Kohl's Indiana a third party beneficiary of the letters of credit. Rather, Kohl's Indiana seeks only to pursue its litigation against the Commission, whereby Kohl's Indiana might indirectly obtain the proceeds from the letters of credit to satisfy a judgment in its favor.

ing any claim that Kohl's Indiana may have or assert against the Commission. The trial court erred when it granted summary judgment in favor of Kohl's Indiana.

Reversed and remanded.

KIRSCH, J., and BARNES, J., concur.