CITY OF MAPLE GROVE,
Respondent,

v.

MARKETLINE CONSTRUCTION
CAPITAL, LLC, Appellant.

Nos. A10–2051, A11–148.

Court of Appeals of Minnesota.

Aug. 1, 2011.

George C. Hoff, Shelley M. Ryan, Hoff, Barry & Kozar, P.A., Eden Prairie, MM, for respondent.

Joseph A. Wetch Jr., Kasey D. McNary, Serkland Law Firm, Fargo, ND, for appellant.

Considered and decided by MINGE, Presiding Judge; PETERSON, Judge; and SCHELLHAS, Judge.

## OPINION

MINGE, Judge.

Appellant challenges the district court's entry of summary judgment in favor of respondent, dismissal of appellant's counterclaims, and refusal to grant a continuance to conduct additional discovery. Appellant argues that there are issues of material fact regarding whether certain documents were letters of credit and whether respondent fraudulently or negligently misrepresented the effect of issuing the alleged letters of credit, and that it should be allowed a continuance to engage in discovery to establish a factual basis for its defenses and counterclaims. Appellant also challenges the district court's award of attorney fees to respondent. Because the documents meet the definition of a letter of credit under Minn.Stat. §§ 336.5–102(a)(10), .5–104 (2010), because appellant failed to establish any dispute of material fact regarding the elements of its counterclaims, and because appellant did not make a showing that a continuance for further discovery would lead to relevant evidence; we affirm the district court's entry of summary judgment for respondent, dismissal of appellant's counterclaims, and refusal to grant a continuance. Because the district court made no findings regarding the reasonableness of respondent's requested at-

torney fees, we reverse the award of attorney fees and remand to the district court to reconsider the fee request and make such findings.

## FACTS

Respondent City of Maple Grove entered into two developer's agreements with Dingman Development, LLC to establish new subdivisions bearing the names Maple Creek Estates and The Preserve at Rush Creek. The developer's agreements consisted of several parts, including requirements that Dingman complete and pay for certain improvements incident to the developments and procure and furnish to Maple Grove letters of credit, or other sureties, which Maple Grove could draw upon to pay any deficiencies in Dingman's performance of its obligations.[1]

In 2009, pursuant to the developer's agreements, appellant Marketline Construction Capital, LLC issued three documents to Maple Grove, each labeled a "letter of credit." Each document had an expiration date of February 1, 2010, and identified Dingman as the applicant. In the aggregate, the three documents required Marketline to pay $228,930 if drawn upon by Maple Grove. The documents contained the following language identifying the procedure for drawing against Marketline's obligation:

> Available against drafts drawn at sight on Marketline Construction Capital, LLC, Edina, Minnesota bearing the clause: "Drawn under standby letter of

credit number *06–713–DD* of Marketline Construction Capital, LLC," accompanied by the following document:

A certificate purportedly signed by the city administrator of the city of Maple Grove stating: " [2] We are drawing under your standby letter of credit No. *06–713–DD* as Dingman Development Mg, LLC has failed to *install and pay for the petitioned items in to the approval of the plat relating to The Preserve at Rush Creek. The petitioned items are listed in Exhibit "B" under of the Developer's Agreement between the city of Maple Grove and Dingman Development Mg, LLC.* The city is entitled to the unreleased portion of this standby letter of credit which the city will hold until all *installation of street and utility improvements relating to plat known as "The Preserve at Rush Creek", have been* installed, paid for, submitted to the city and approved....

We hereby engage with drawers and/or bona fide holders that drafts drawn and negotiated in conformity with the terms of this credit will be duly honored upon presentation.

(The italicized language is unique to one of the letters of credit; however, each letter has a parallel provision.) Jay H. Schoo, Marketline's president, signed each document.

By the end of 2009, Dingman had relinquished his ownership interests in both Maple Creek Estates and The Preserve at Rush Creek. On January 20, 2010, Maple

---

1. The agreements also required that Dingman make certain special-assessment payments to Maple Grove, which then enabled Maple Grove to pay bonds that were issued to finance other improvements, and that Dingman obtain additional letters of credit incident to that obligation.

2. This quotation mark before "We are drawing ..." has no corresponding ending quotation mark. It is unclear whether the language in that sentence, the entire paragraph, or the remainder of the document must be reproduced in the "certificate" to properly draw on the document. But because Marketline did not allege that Maple Grove failed to follow the appropriate procedure for drawing on the documents, we do not further consider the question of where the quotation ends.

Grove notified Marketline that it was making a demand on the three claimed letters of credit unless Marketline agreed to extend their expiration dates for another year. The notification included sight drafts and certificates meeting the requirements specified in the letters of credit. Marketline declined to extend the expiration dates and refused to honor the letters of credit.

In March 2010, Maple Grove sued Marketline for wrongfully dishonoring the letters of credit. Marketline denied that the documents were letters of credit and that its actions were wrongful, and alleged multiple counterclaims against Maple Grove, including fraud, negligent misrepresentation, promissory estoppel, and unjust enrichment. Maple Grove served interrogatories and document requests, and received Marketline's responses by the end of June. Marketline did not engage in discovery until August 2010, when it attempted to schedule depositions.

Also in August, Maple Grove moved for summary judgment on its wrongful-dishonor claim and dismissal of Marketline's counterclaims. Maple Grove refused to submit to depositions pending a district court hearing on its motions. Marketline moved to continue consideration of Maple Grove's motions until after it could conduct depositions. After a hearing, the district court denied the continuance and concluded that the documents were letters of credit, that further discovery would not provide information relevant to Marketline's liability under the letters of credit, and that Marketline failed to establish the necessary elements of each of its counterclaims. Accordingly, the district court dismissed Marketline's counterclaims and ordered entry of summary judgment for Maple Grove.

Maple Grove then moved the district court for attorney fees and costs and dis-

bursements. Before the district court ruled on this motion, Marketline appealed the entry of summary judgment. Maple Grove challenged jurisdiction while the motion for attorney fees was pending. A special term panel determined that this court had jurisdiction over the appeal of summary judgment because the motion for attorney fees was collateral to the merits of the underlying action and did not prevent that entry of summary judgment from being an appealable final judgment.

In December, the district court awarded Maple Grove attorney fees and other expenses. Marketline appealed the award, and this court consolidated Marketline's two appeals.

## ISSUES

I. Did the district court err in determining that the documents in question are letters of credit that triggered Marketline's obligations and were wrongfully dishonored?

II. Did Marketline sufficiently establish any of its counterclaims?

III. Did the district court abuse its discretion in denying Marketline's motion for a continuance?

IV. Did the district court err in awarding attorney fees to Maple Grove?

## ANALYSIS

### I. Qualifying as Letters of Credit

■ The first issue is whether the district court erred in granting summary judgment to Maple Grove on its claim that Marketline wrongfully dishonored the letters of credit. On appeal from summary judgment, we review de novo (1) whether there are any genuine issues of material fact; and (2) whether the district court erred in its application of the law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644

N.W.2d 72, 76 (Minn.2002). This court "must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

■■■ Marketline argues that the district court erred in concluding that the documents meet the definition of a letter of credit. Letters of credit are governed by Article 5 of the Uniform Commercial Code (U.C.C.), as codified in Minnesota Statutes sections 336.5–101 to .5–118 (2010). "Application of a statute to the undisputed facts of a case involves a question of law, and the district court's decision is not binding on this court." *Davies v. W. Publ'g Co.,* 622 N.W.2d 836, 841 (Minn. App.2001), *review denied* (Minn. May 29, 2001). This court applies general contract principles when construing the nature and terms of a letter of credit or of a guaranty. *See Am. Tobacco Co. v. Chalfen,* 260 Minn. 79, 81, 108 N.W.2d 702, 704 (1961); *United Shippers Co-op. v. Soukup,* 459 N.W.2d 343, 345 (Minn.App.1990). When contract terms are unambiguous and can be given their plain and ordinary meaning, "construction of the contract is a matter for the court and summary judgment may be appropriate." *Bank Midwest, Minn., Iowa, N.A. v. Lipetzky,* 674 N.W.2d 176, 179 (Minn.2004). But when the terms are ambiguous, "resort may be had to extrinsic evidence, and construction then becomes a question of fact." *Donnay v. Boulware,* 275 Minn. 37, 44, 144 N.W.2d 711, 716 (1966).

The district court relied heavily on the titles of the documents and our decision in *United Shippers* to conclude that the documents are letters of credit. 459 N.W.2d at 343. *United Shippers* stated that, "by definition, a document issued by a bank can be a letter of credit if it requires a documentary draft or a demand for payment, or, if it conspicuously states that it is a

letter of credit." *Id.* at 344. However, this definition was interpreting Minn.Stat. § 336.5–102 (1988), which has since been repealed. *See* 1997 Minn. Laws ch. 11, art. 1, § 20, at 205 (repealing sections 336.5–101 to 336.5–117). Therefore, the district court's decision requires careful review.

Minnesota statutes now define a letter of credit as a signed statement that indicates "a definite undertaking . . . by an issuer to a beneficiary at the request or for the account of an applicant . . . to honor a documentary presentation by payment or delivery of an item of value." Minn.Stat. §§ 336.5–102(a)(10), .5–104. The definition is further explained in the comment to Article 5, which states that labels do not conclusively establish that a document is a letter of credit. Minn.Stat. Ann. § 336.5–102 U.C.C. cmt., para. 6 (West 2002). The comment notes that a document labeled as a letter of credit may not be so if it requires the issuer to pay "upon the determination of an extrinsic fact . . . and where that condition appears on its face to be fundamental and would, if ignored, leave no obligation to the issuer." *Id.*

■■■ Therefore, under current law, a letter of credit requires the issuer to determine only whether the presentation conforms to requirements as to appearance. If a document purporting to be a letter of credit requires the issuer to determine whether an event or other condition outside the conforming presentation has occurred, then that document is not truly a letter of credit. Rather, it may be some other form of surety, such as a guaranty.

■■■ Marketline argues that the documents it issued to Maple Grove do not meet the definition of a letter of credit because its obligation to pay could not be triggered unless three conditions had been satisfied: (1) Dingman failed to pay certain

special assessments levied by Maple Grove; (2) Maple Grove lacked sufficient cash flow to pay holders of its special-assessment bonds; and (3) Dingman remained the owner of the properties. Marketline argues that these conditions are evident in the developer's agreements between Dingman and Maple Grove. However, these arguments appear to relate to sections of the developer's agreements requiring Dingman to furnish letters of credit to Maple Grove in other contexts. At a minimum, none of the documents at issue here reference such conditions or contexts that relate to such conditions. Accordingly, we consider these arguments irrelevant to the dispute on appeal. In addition, we note that matters extrinsic to a letter of credit may only be considered if the terms of the letter of credit are ambiguous. *Donnay*, 275 Minn. at 44, 144 N.W.2d at 716. Marketline does not argue that any of the documents termed "letters of credit" are ambiguous. Therefore, if these documents are letters of credit, then the claimed conditions in the developer's agreements are irrelevant to Marketline's obligations.

Here, each document is labeled a letter of credit and unambiguously provides that, to draw funds, Maple Grove need only present to Marketline a signed certificate stating that Dingman has failed to install and pay for certain items designated in the developer's agreements. According to the documents, whether Dingman has failed to meet the requirements is to be determined by Maple Grove, not Marketline. The documents do not provide for Marketline's making any determination of an extrinsic fact before Maple Grove can draw on Marketline's obligation to pay. This is a key characteristic of the limited role played by the issuer of a letter of credit. *See Fifth Third Bank v. Kohl's Indiana, L.P.*, 918 N.E.2d 371, 376 (Ind.Ct.App.2009) (concluding documents were letters of credit

under Article 5 of U.C.C. because they required the beneficiary to determine whether the applicant failed to meet certain requirements, not the issuer); *Osten Meat Co. v. First of Am. Bank–Se. Mich., NA*, 205 Mich.App. 686, 517 N.W.2d 742, 745 (1994) (noting that requiring issuer to investigate the underlying transaction would negate the advantages of using a letter of credit, including "its independence from the underlying transaction and the predictability and swiftness of the determination to honor or dishonor a draw request"). Therefore, we agree with the district court's conclusion that the documents are letters of credit.

 Having determined that the documents are letters of credit, we must further consider Marketline's presumptive obligation. Under a letter of credit, the "[r]ights and obligations of an issuer to a beneficiary ... are independent of the existence, performance, or nonperformance of a contract or arrangement out of which the letter of credit arises or which underlies it, including contracts or arrangements ... between the applicant and the beneficiary." Minn.Stat. § 336.5–103(d). Thus, the rights and obligations of Marketline to Maple Grove are independent from Maple Grove's contract with Dingman. The provisions of the developer's agreements between Dingman and Maple Grove and the performance of either party under such agreements have no bearing on Marketline's obligation to honor a proper demand on the letters of credit. Keeping Marketline's obligation to Maple Grove independent from the underlying contracts between Maple Grove and Dingman is consistent with the historical purpose behind the use of a letter of credit. *See Ground Air Transfer, Inc. v. Westates Airlines, Inc.*, 899 F.2d 1269, 1272 (1st Cir.1990) (recognizing that the terms of an underlying contract are "beside the point"

because refusal to honor the letter of credit "may deprive the beneficiary of the very benefit for which he bargained, namely that any such underlying contract dispute will be resolved while he is in possession of the money" (quotation omitted)). Because Marketline does not argue that Maple Grove failed to make a proper demand on the letters of credit, the district court properly entered summary judgment for Maple Grove on its wrongful-dishonor claim.

## II. Counterclaims

■ The second issue is whether the district court erred by dismissing Marketline's counterclaims of fraud, negligent misrepresentation, promissory estoppel, and unjust enrichment. Because the district court considered evidence outside the pleadings, we analyze the motion to dismiss under the rules governing summary judgment. Minn. R. Civ. P. 12.02. "In order to successfully oppose a motion for summary judgment, a party cannot rely upon mere general statements of fact but rather must demonstrate ... that specific facts are in existence which create a genuine issue for trial." *Hunt v. IBM Mid Am. Emps. Fed. Credit Union*, 384 N.W.2d 853, 855 (Minn.1986); *see also* Minn. R. Civ. P. 56.05 (stating that an adverse party to a motion for summary judgment "must present specific facts showing that there is a genuine issue for trial").

### A. Fraud, Negligent Misrepresentation, and Promissory Estoppel

■ In its counterclaims of fraud, negligent misrepresentation, and promissory estoppel, Marketline alleged that Maple Grove made "various representations" that Marketline's obligation under the letters of credit would be conditional and would expire if Dingman transferred the property.

In essence, Marketline alleged that Maple Grove misrepresented the nature and effect of Marketline's liability under the letters of credit. A crucial element of fraud, negligent misrepresentation, and promissory estoppel claims is reliance. *See Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn.1986) (stating that a required element of fraud is that a party relies on the fraudulent action); *Bonhiver v. Graff*, 311 Minn. 111, 122, 248 N.W.2d 291, 298 (1976) (identifying reliance as a required element of negligent misrepresentation); *Deli v. Univ. of Minn.*, 578 N.W.2d 779, 781 (Minn.App.1998) (stating that reliance is a required element to recover under promissory estoppel), *review denied* (Minn. July 16, 1998).

■ Here, Marketline did not identify who made the representations, when they were made, what the representations specifically were, whether it relied on those representations, or what damages were suffered. Because Marketline claims that it received these representations, it, not Maple Grove, is in the best position to know the specific facts. But Marketline supplied no affidavit or other indicia of admissible evidence identifying these specific facts. Therefore, because Marketline failed to establish a prima facie showing of fraud, negligent misrepresentation, and promissory estoppel, we conclude that the district court properly granted Maple Grove's motion to dismiss those counterclaims of Marketline.

### B. Unjust Enrichment

■ "To establish an unjust enrichment claim, the claimant must show that the defendant has knowingly received or obtained something of value for which the defendant in equity and good conscience should pay." *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn.1996) (quotation omitted). "Un-

just enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *Id.* (quotation omitted).

■■■ Marketline argues that it is unjust to allow Maple Grove to collect on the letters of credit when Dingman no longer owned the properties at the time of Maple Grove's presentation. However, Marketline has not provided any specific evidence showing that Maple Grove took an illegal or unlawful action to draw on the letters of credit. Vague assertions that Maple Grove committed some type of fraud or negligent misrepresentation are insufficient to establish a prima facie claim of unjust enrichment that would survive summary judgment. Therefore, the district court properly granted Maple Grove's motion to dismiss Marketline's counterclaim of unjust enrichment.

### III. Motion for Continuance

■■■ Marketline argues that the district court erred by ruling on Maple Grove's motion for summary judgment without allowing Marketline a continuance to conduct additional discovery. When a party challenging a motion for summary judgment provides an affidavit with reasons why the party cannot present facts essential to justify rejecting the motion, the district court may order a continuance to permit discovery. Minn. R. Civ. P. 56.06. An affidavit filed pursuant to rule 56.06 "must be specific about the evidence expected, the source of discovery necessary to obtain the evidence, and the reasons for the failure to complete discovery to date." *Alliance for Metro. Stability v. Metro. Council,* 671 N.W.2d 905, 919 (Minn.App.2003).

■■■ The district court must consider two factors in determining whether to grant such a motion for continuance: (1) whether the nonmoving party is "seeking further discovery in the good faith belief that material facts will be uncovered, or is [the party] merely engaging in a fishing expedition"; and (2) whether the nonmoving party has "been diligent in obtaining or seeking discovery" before requesting the continuance. *Rice v. Perl,* 320 N.W.2d 407, 412 (Minn.1982). We review a district court's denial of a motion for a continuance for an abuse of discretion. *Molde v. CitiMortgage, Inc.,* 781 N.W.2d 36, 45 (Minn. App.2010).

■■■ Here, Marketline sought a continuance to conduct depositions of the Maple Grove employee with the most information regarding the litigation, the representative who had the most conversations with Marketline, and the party with the most information regarding the developer's agreements. It appears that the purpose of the depositions was to determine whether Maple Grove's assessment accounts had sufficient cash flow and what specific representations Maple Grove made to Marketline regarding the nature of the letters of credit. Marketline claimed the depositions were important to establishing its counterclaims, which were largely based on matters regarding the special assessments. The district court found that the information sought was not relevant to the question of whether the documents were letters of credit and that Marketline was in the best position to know what specific representations were made, and denied the motion for a continuance.

We have already concluded that, under the U.C.C., whether Maple Grove had sufficient cash flow was irrelevant to Marketline's obligation under the letters of credit at issue here. In addition, this argument relies on the assumption that the letters of

credit here were furnished to satisfy Dingman's obligation to make payments on the special assessments, and, as we previously noted, there is no evidence suggesting that this is so.[3] A party is not entitled to a continuance to engage in discovery incident to non-meritorious claims.

Even if Marketline had valid claims on special-assessment-related issues, it appears the district court properly denied the continuance. Marketline sought information from Maple Grove regarding the nature and timing of alleged representations by Maple Grove. As the district court stated, to survive summary judgment, Marketline had the burden of establishing what it was told and that it relied on this information. Depositions should not be needed to obtain this information because Marketline should have already had this information. Failure to make a prima facie showing of actual knowledge of the alleged fraudulent or negligent misrepresentations indicates lack of a factual basis for continuing this litigation.

In sum, we conclude that the district court did not abuse its discretion in denying the motion for a continuance.

## IV. Attorney Fees

Marketline challenges the district court's award of attorney fees and other expenses of litigation to Maple Grove. The district court is obligated to award reasonable attorney fees and other expenses of litigation to a prevailing party in an action under Article 5 of the U.C.C. Minn.Stat. § 336.5–111(e); *see also Nelson v. Master Vaccine, Inc.,* 382 N.W.2d 261, 266 (Minn.App.1986).

In determining the proper attorney fee award, the district court should review the hours expended and the hourly rates requested and base its decision on these and other relevant factors, including the nature and difficulty of the litigation; the amount in controversy and the results obtained; the fees customarily charged for similar legal services; the experience, reputation, and ability of counsel; and the fee arrangement existing between counsel and client. *State v. Paulson,* 290 Minn. 371, 373, 188 N.W.2d 424, 426 (1971). When a party challenges the reasonableness of the requested attorney fees, "the district court must provide a concise but clear explanation of its reasons for the fee award." *Milner v. Farmers Ins. Exch.,* 748 N.W.2d 608, 621 (Minn.2008) (quotation omitted); *see also Anderson v. Hunter, Keith, Marshall & Co.,* 417 N.W.2d 619, 629–30 (Minn.1988) (remanding for findings after district court accepted at face value one party's representation of the hours expended without further analysis). The reasonableness of the hours expended and the fees imposed raise questions of fact,

---

3. If the letters of credit here were those pertaining to Dingman's obligation to make payments on the special assessments, Marketline may have had good cause for a continuance. An issuer may refuse to honor a presentation made by a beneficiary if honoring would "facilitate a material fraud by the beneficiary on the issuer or applicant." Minn.Stat. § 336.5–109(a)(2). A "[m]aterial fraud by the beneficiary occurs only when the beneficiary has no colorable right to expect honor and where there is no basis in fact to support such a right to honor." Minn.Stat. Ann. § 336.5–109 U.C.C. cmt., para. 1 (West 2002). Because the developer's agreements include a provision stating that all special assessments must be paid upon sale of the property, and because Dingman clearly sold his property before Maple Grove attempted to draw on the letters of credit, it follows that, if indeed the letters of credit were related to the special assessments, and if the assessments were otherwise paid, Maple Grove may have received a double payment by drawing on the letters of credit and Marketline may have been able to establish some impropriety. But because there is no evidence suggesting the letters of credit at issue here are the letters pertaining to special assessments, Marketline's argument fails.

and the district court's findings will be reversed only if they are clearly erroneous. *Amerman v. Lakeland Dev. Corp.*, 295 Minn. 536, 537, 203 N.W.2d 400, 400–01 (1973).

Because Maple Grove is the prevailing party in its action, section 336.5–111(e) provides that Maple Grove is entitled to reasonable attorney fees and other expenses of litigation. Maple Grove submitted a request for attorney fees in the amount of $45,459. Marketline vigorously disputed the reasonableness of the hours submitted (273.3 hours total) and the total billed amount. The district court ordered Marketline to pay the submitted amounts without making any findings or providing any explanation as to reasonableness.

Marketline argues that the billing statements submitted by Maple Grove indicate potential double billing. Maple Grove engaged a law firm to bring its wrongful-dishonor claim against Marketline. Then, when Marketline brought its various counterclaims, Maple Grove's insurer, the League of Minnesota Cities Insurance Trust (LMCIT), assumed the defense obligation and hired the same law firm to defend against the counterclaims. For ease of billing, Maple Grove and LMCIT agreed to split the attorney fees "50–50." Billing records indicate that Maple Grove incurred $27,890 in attorney fees and that LMCIT incurred $17,569 in attorney fees.[4] Despite this separation of the fees, Maple Grove requested compensation for the combined amount of $45,459. It is unclear whether Maple Grove is responsible for the combined amount of attorney fees when it was billed for only one portion. *Cf. Anderson*, 417 N.W.2d at 629 n. 10

(stating that hours "not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983))).

■ We recognize that, as a general rule, Marketline is liable for attorney fees incurred in an action under Article 5 of the U.C.C. Although Marketline's counterclaims sought relief under the common law, they are incident to the letters of credit. LMCIT hired the law firm to represent Maple Grove on the counterclaims. Therefore, to order Marketline to pay LMCIT's attorney fees, the district court must identify either Maple Grove's liability for those fees or LMCIT's right to recover from Marketline. *See Barr/Nelson, Inc. v. Tonto's Inc.*, 336 N.W.2d 46, 53 (Minn. 1983) (recognizing that attorney fees are generally not recoverable "unless there is a specific contract permitting or a statute authorizing such recovery").

Without findings, we cannot determine whether the district court clearly erred in determining the reasonableness of the submitted attorney fees. Therefore, a remand to make the requisite findings is required. *See Anderson*, 417 N.W.2d at 629–30 (remanding because the district court failed to make any findings regarding the reasonableness of submitted attorney fees). On remand, the district court is to determine whether and on what basis Marketline is liable for attorney fees incurred by LMCIT, as well as the reasonable amount of attorney fees.

## DECISION

We conclude that the documents issued by Marketline are letters of credit, that

---

4. Despite the agreement to share equal responsibility for attorney fees, Maple Grove incurred a larger share of the responsibility. This is because, for one month prior to Marketline bringing its counterclaims, Maple Grove had sole responsibility for the attorney fees. It was not until after Marketline brought the counterclaims that LMCIT shared responsibility.

Marketline wrongfully dishonored those letters of credit, that Marketline failed to allege the specific facts necessary to sustain its counterclaims, and that the district court did not abuse its discretion in denying Marketline's request for a continuance to pursue further discovery. Therefore, we affirm the district court's entry of summary judgment in favor of Maple Grove, dismissal of Marketline's counterclaims, and refusal to grant a continuance.

Further, because Maple Grove is the prevailing party in a claim under Article 5 of the U.C.C., Marketline is liable for reasonable attorney fees. However, because the district court did not make findings regarding the reasonableness of the fees or explaining why Marketline should be liable for LMCIT's fees, we reverse the award of such fees and remand to the district court to make findings and award fees in a manner consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**