*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

INFINITY ACQUISITIONS, LLC,

Plaintiff-Appellant,

v

SARDINIA, INC., doing business as SARDINIA
DEVELOPMENT, LLC, THERESA MARROCCO,
KATHERINE MARROCCO, and MICHAEL
MCLAUGHLIN,

Defendants-Appellees.

UNPUBLISHED
August 15, 2024

No. 364938
Wayne Circuit Court
LC No. 21-010469-CB

Before: O'BRIEN, P.J., and CAVANAGH and SHAPIRO[*], JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order dismissing its claims for breach of contract, fraudulent inducement, and tortious interference with a contract, after the trial court granted summary disposition in favor of defendants under MCR 2.116(C)(8) (failure to state a claim on which relief can be granted) and (C)(10) (no genuine issue of material fact). We affirm.

Plaintiff offered to purchase land in Flat Rock, Michigan, to develop into single-family homes. Sardinia Development, LLC (Sardinia Development), agreed to sell the vacant land to plaintiff for $920,000. Plaintiff was required to pay an earnest money deposit to a title company, acting as the escrow agent, in the amount of $25,000, no later than two days after it received Sardinia Development's acceptance of the offer. Plaintiff also had 60 days to investigate and inspect the property. Sardinia Development was obligated to obtain municipal approval to change the property's zoning from multifamily units to single-family homes by the date of the closing. The parties later amended the agreement, which included extending the review period to August 15, 2021; the closing was to occur on or before August 30, 2021. Apparently, when it looked like the sale would not go through due to the zoning issue, a third party purchased the property, although one of the seller's officers or agents agreed to extend a deadline in the agreement with plaintiff at about the same time. The property was eventually sold to the third party and plaintiff brought this action.

---

[*] Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

-1-

Defendants moved for summary disposition on all of plaintiff's claims for failure to state a claim on which relief can be granted, MCR 2.116(C)(8), and no genuine issue of material fact, MCR 2.116(C)(10). Plaintiff was allowed to amend its complaint and defendants renewed their motion for summary disposition. In its amended complaint, plaintiff sued Sardinia, Inc. (Sardinia), Theresa Marrocco (Theresa), Katherine Marrocco (Katherine), and Michael McLaughlin. In contrast, in the original complaint, plaintiff sued both Sardinia and Sardinia Development, although the contract to purchase the property identified only Sardinia Development as the seller.

Plaintiff alleged in Count I of its amended complaint that defendants breached the contract because (1) Sardinia Development was not an existing corporation since articles of organization were not filed and, as a result, Theresa, Katherine, and McLaughlin were personally liable; (2) defendants entered into the contract to sell the property to the third party and closed on that deal while there was still a pending contract with plaintiff; and (3) defendants manufactured a reason for not proceeding with the sale to plaintiff by removing the request to convert the property to single-family use from the city council's August 16, 2021 agenda. Plaintiff claimed that it fulfilled all obligations owed to defendants under the agreement.

In Count II, a fraudulent inducement claim, plaintiff alleged that defendants made material misrepresentations to induce it to enter into the purchase agreement when defendants had no intention of requesting the zoning change and moving forward with the agreement. Instead, defendants secretly contracted with the third party. And in Court III, plaintiff raised a claim for tortious interference against the individual defendants. According to plaintiff, the individual defendants interfered with the purchase agreement by selling the property to the third party instead of seeking the city council's approval for a zoning change.

The trial court granted summary disposition in favor of defendants, ruling that plaintiff failed to properly pay the earnest money deposit, and therefore, plaintiff was the first to materially breach the contract. The court rejected plaintiff's claim that there was no valid purchase agreement because Sardinia Development was not a properly registered corporate entity. Accordingly, plaintiff could not hold the individual defendants liable. And, the court ruled, plaintiff could not hold the individual defendants liable on its tort theories. This appeal followed.

## I. BREACH OF CONTRACT

Plaintiff first argues that it was error for the trial court to dismiss its claim for breach of contract. We disagree.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). The trial court granted defendants' motion for summary disposition on this issue under MCR 2.116(C)(10). A motion brought under MCR 2.116(C)(10) tests the factual sufficiency of the claim. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016) (citation omitted). In reviewing a motion under this subrule, a court must consider affidavits, pleadings, depositions, admissions, and other evidence produced by the parties, in the light most favorable to the party opposing the motion. *Id*. (citation omitted). If the proffered evidence fails to establish a genuine issue of material fact, the moving party is entitled to judgment as a matter of law. *Id*. (citation omitted).

Under the terms of the purchase agreement, plaintiff was required to pay a $25,000 earnest money deposit within two business days of the acceptance of its offer. Defendants argued that plaintiff failed to satisfy this condition precedent for the parties' agreement because plaintiff sent a purported letter of credit to the escrow agent, which allowed the escrow agent access to $1 million in credit issued to Rino Soave, plaintiff's principal, but the parties' agreement required a payment in cash or by check. We agree that plaintiff's failure to adhere to the terms of the agreement prohibits plaintiff from pursuing its breach of contract claim.

A party claiming breach of contract must prove by a preponderance of the evidence that (1) there was a contract, (2) the other party breached the contract, and (3) damages resulted to the party claiming a breach. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). A party who first breaches a contract cannot maintain an action against the other party for his subsequent breach or failure to perform. *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994) (citation omitted). This rule only applies when the initial breach is substantial. *Id*. Whether a substantial breach occurred depends on whether the nonbreaching party obtained the benefit which he reasonably expected to receive. *Able Demolition, Inc v City of Pontiac*, 275 Mich App 577, 585; 739 NW2d 696 (2007) (citation omitted). A substantial breach is one that "effect[s] such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party." *McCarty v Mercury Metalcraft Co*, 372 Mich 567, 574; 127 NW2d 340 (1964) (internal citations omitted).

Plaintiff argues that the letter of credit fulfilled the deposit requirement because the agreement did not require payment in the form of check or cash. "A letter of credit is 'an engagement by a bank . . . made at the request of a customer . . . that the [bank] will honor drafts or other demands for payment upon compliance with the conditions specified in the credit.' " *Osten Meat Co v First of America Bank-Southeast Mich, NA*, 205 Mich App 686, 689; 517 NW2d 742 (1994), quoting UCC 5-103(1)(a) and the former MCL 440.5103(1)(a).

A letter of credit is considered enforceable according to its terms against the issuer when sent to the intended beneficiary and it is revocable only if it expressly provides so. See MCL 440.5106(1). It must also be authenticated with a signature, by the parties' agreement, or the issuing institution's standard practices. MCL 440.5104.[1]

When interpreting a contract, the court's obligation is to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning. *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). If the language is unambiguous, courts must interpret and enforce the contract as written, because the unambiguous language reflects the

---

[1] The trial court and defendants emphasized that the letter sent by the bank to the escrow agent is not signed by the bank's lending officer. There are other ways to authenticate a letter of credit and this issue was not properly developed on the relevant facts. For purposes of this appeal, it is assumed that plaintiff provided a properly authenticated letter of credit.

parties' intent as a matter of law. *Id*. However, where the contract's language is ambiguous, extrinsic evidence can be offered to determine the parties' intent. *Id*.

Reading the parties' agreement as a whole, the parties did not contemplate satisfying the earnest money deposit requirement by allowing plaintiff to send a letter of credit to the escrow agent. The terms of the purchase agreement required plaintiff to turn over $25,000 directly to the escrow agent and it was anticipated that the funds could generate interest while the sale was pending. That expectation conflicts with the letter of credit produced by plaintiff. As explained later, plaintiff's decision to pay the earnest money deposit with a letter of credit changed the duties owed by the escrow agent from what the parties expressly outlined in their agreement. Nothing in the purchase agreement provided plaintiff with the option of paying the earnest money deposit by producing a letter of credit. Instead, plaintiff attempted to unilaterally modify the terms of the agreement. Because there was no modification made in writing, signed by defendants, there could be no modification of the manner in which the earnest money deposit should have been paid.

Defendants argue that plaintiff could not have substantially performed under the contract by securing the letter of credit because the earnest money deposit was an express condition precedent. A "condition precedent" is

> a fact or event which the parties intend must exist or take place before there is a right to performance. A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor. If the condition is not fulfilled, the right to enforce the contract does not come into existence. Whether a provision in a contract is a condition the nonfulfillment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they executed the contract. [*Knox v Knox*, 337 Mich 109, 118-119; 59 NW2d 108 (1953), quoting *Lach v Cahill*, 138 Conn 418; 85 A2d 481 (1951) (internal citations omitted).]

Express conditions must be exactly fulfilled and the substantial-performance doctrine does not apply to express conditions. *Brown-Marx Assoc, Ltd v Emigrant Savings Bank*, 703 F2d 1361, 1367 (CA 11, 1983).

We agree that the earnest money deposit is a condition precedent in this case. The parties' agreement provides that there was no enforceable agreement unless plaintiff timely paid the earnest money deposit after its offer was accepted. The payment of the $25,000 was intended to represent plaintiff's good faith in working toward the closing and performing all obligations under the agreement.

Per the purchase agreement, the payment was to be made to the escrow agent and the agent was to hold the money. Plaintiff's decision to rely on a letter of credit imposed additional obligations on the escrow agent that are not addressed in the purchase agreement. Paragraph 17 of the purchase agreement outlines the limited duties of the escrow agent. However, plaintiff's actions changed this scenario and obligated the escrow agent to request payment from the bank to cover the earnest money deposit. This amounted to a unilateral modification of this condition of the parties' agreement. The agreement did not become effective or enforceable until the earnest

money deposit was paid. Accordingly, plaintiff cannot maintain its claim for breach of contract because it did not satisfy this condition.

Plaintiff contends that defendants' arguments are waived because they did not challenge the form of payment of the earnest money deposit until this litigation. A waiver consists of a voluntary and intentional abandonment of a known right. *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 374; 666 NW2d 251 (2003). A contractual provision may be waived where a party's course of conduct provides clear and convincing evidence that the party knowingly waived enforcement of the term. *Id*.

Plaintiff cannot prove a waiver by defendants for the simple reason that the letter of credit was sent to the escrow agent and, even if the escrow agent accepted it, there is no evidence that defendants approved of using the letter of credit as the earnest money deposit. According to defendants, they did not learn of the letter of credit until the purchase agreement was amended and Theresa testified at her deposition that she never saw the letter of credit until her deposition. Plaintiff admits it relies solely on defendants' silence and inaction in response to it providing the letter of credit. Because defendants were not in receipt of the earnest money deposit, plaintiff has not shown that defendants' delay in raising this issue involves an intentional waiver of their right to enforce the terms of the purchase agreement.

Plaintiff next argues that the trial court ignored evidence that defendants admitted to breaching the contract. This evidence includes an e-mail from defendants' attorney, stating that he believed that defendants breached the contract by entering into the agreement to sell the property to the third party. In addition, at her deposition, Theresa admitted that in July 2021, she entered into the agreement with the third party, although the contract with plaintiff was still in effect. Theresa explained that the contract with the third party was a backup offer in the event the deal with plaintiff did not close. Despite clear evidence that defendants signed an agreement with another buyer, there was no indication that they were not willing to go forward under the agreement with plaintiff. Plaintiff has not explained how this evidence would have changed the outcome of defendants' motion for summary disposition if the trial court had directly addressed it.

Given plaintiff's failure to satisfy the condition precedent by properly paying the earnest money deposit, there was no enforceable contract between the parties. Plaintiff cannot prove breach of contract because it did not have an enforceable agreement with defendants. Accordingly, the trial court did not err by granting summary disposition in favor of defendants on plaintiff's breach of contract claim.

Plaintiff separately argues that the trial court should have granted judgment in its favor on its breach-of-contract claim under MCR 2.116(I)(2). Because we conclude that the trial court properly granted summary disposition in favor of defendants on the breach-of-contract claim, plaintiff was not entitled to judgment in its favor. Similarly, we need not address plaintiff's argument that its damages for breach of contract were not speculative.

## II. LIABILITY OF THE INDIVIDUAL DEFENDANTS

Although Sardinia was the owner of the vacant property, Sardinia Development was identified as the seller in the purchase agreement with plaintiff. Sardinia Development was not

properly registered as a corporate entity and, for that reason, plaintiff alleged that the individual defendants should be held personally liable for breach of contract. The trial court rejected plaintiff's attempt to hold the individual defendants liable because they were acting on behalf of the property's owner, Sardinia, not Sardinia Development. We conclude that the trial court did not err in granting summary disposition in favor of defendants on this issue under MCR 2.116(C)(10) because no genuine issue of material fact existed to support plaintiff's theory.

There is no question that Sardinia Development was not properly organized as a limited liability corporation and it was incorrectly identified as the seller of the property in the purchase agreement because the property was owned by Sardinia. At the time this action was filed, plaintiff acknowledged that Sardinia consisted of a single corporation and that it had the ability to convey the property to plaintiff. While Sardinia Development is an unregistered name under which Sardinia was doing business, this state has not adopted any punishment or remedy for businesses that do not register. See MCL 450.1217. Instead, plaintiff seeks to hold the individual defendants personally liable.

As explained in *Riddle v Lacey & Jones*, 135 Mich App 241, 246-247; 351 NW2d 916 (1984), where an individual makes a contract with another as an agent for a disclosed principal, that agent is not a party to the contract and cannot be held liable for the principal's failure to perform. However, plaintiff relies on *Campbell v Rukamp*, 260 Mich 43, 46-47; 244 NW 222 (1932), wherein the Court explained when an individual conducting business as a corporate entity can be held liable:

> The business was carried on under the name of the Associated Foundry & Machine Company. This proposed association, never having reached the stage of being a de jure or de facto corporation, could not exercise any corporate powers, assert corporate rights, or assume corporate liabilities.

> The law is well settled that: "If a single individual assumes to act as a corporation and to contract as such, where there is no corporation either de jure or de facto, he will be individually liable on the contract; and individual liability will also attach to all of the stockholders or members of a pretended but nonexisting corporation on contracts entered into in its name if they have expressly or impliedly authorized the contract." 14 C. J. p. 200.

> Mechem, Elements of Partnership (2d Ed.) § 29, states the rule applicable here:

>> "Promoters of corporations are not, as such, partners. Though engaged in endeavoring to secure the organization of a company to carry on business for pecuniary profit, their immediate object is not the transaction of business for mutual gain, and they do not fall within the definition or the purposes of partnership.

>> "Nevertheless, if they carry on a business as incident to the organization, or if they launch and conduct the business before the corporation is organized, or if they conduct the business without

-6-

ever bringing even a de facto corporation into existence, they will usually be liable as partners."

Had the proposed corporation been duly organized and the mentioned purchase contract ratified, then plaintiffs could not be held as partners, but, without incorporation, under the circumstances we have mentioned, the plaintiffs, who subscribed for stock and advanced money to transact business before incorporation, are liable, as partners, to creditors, although not sustaining the relation of partners between themselves.

Sardinia Development was represented by Theresa and Katherine during these negotiations. Plaintiff knew it was negotiating with Sardinia and Sardinia Development, not the individual defendants. Plaintiff was aware that the individual defendants were acting as agents. The above rule from *Campbell* does not apply here because it was apparent that Sardinia was the property owner and only it could convey title to plaintiff. Even though Sardinia Development was not properly organized as a legal entity, this case does not involve individuals acting on behalf of a nonexistent entity because Sardinia held title. The trial court correctly described this case as involving a typographical error and that error could have been corrected to complete the transaction at the time of the closing.

Even if plaintiff could prove there was a breach of contract, the trial court did not err in holding that the individual defendants cannot be held liable for breach of contract when plaintiff was aware that the property was owned by Sardinia, not Sardinia Development.

### III. FRAUD IN THE INDUCEMENT

Plaintiff argues that the trial court erred in dismissing its claim for fraud in the inducement. We disagree. Plaintiff alleged that defendants made material misrepresentations to induce plaintiff to enter into the purchase agreement. Defendants were alleged to have misrepresented that they would take all necessary action to have the property's zoning changed by the closing date so that plaintiff could build single-family homes on the property. While plaintiff also alleged that defendants secretly contracted with the third party to sell the property while plaintiff's purchase agreement was pending, that allegation does not involve any direct misrepresentation by defendants. However, plaintiff seems to rely on that allegation as proof of defendants' intent to defraud.

On this issue, the court granted summary disposition for defendants under MCR 2.116(C)(8), for failure to state a claim on which relief can be granted. A motion under MCR 2.116(C)(8) tests the legal sufficiency of the claim on the basis of the factual allegations in the complaint. *El-Khalil*, 504 Mich at 159. The trial court must accept all factual allegations as true and decide the motion on the pleadings alone. *Id*. at 160. The motion may only be granted when the claim is so clearly unenforceable that no factual development could possibly justify recovery. *Id*.

While most fraud is predicated on statements involving a past or an existing fact, fraud in the inducement occurs where a party materially misrepresents future conduct. *Custom Data Solutions, Inc v Preferred Capital, Inc*, 274 Mich App 239, 242-243; 733 NW2d 102 (2006)

(citation omitted). Fraud in the inducement requires proof that (1) the defendant made a material representation; (2) the representation was false; (3) the defendant knew the representation was false when made or made it recklessly without knowledge of its truth and as a positive assertion; (4) the representation was made with the intention that the plaintiff act upon it; (5) the plaintiff relied upon the representation; and (6) the plaintiff suffered damages. *Id*. at 243 (citations omitted). Fraud must be established by clear and convincing evidence. *Deschane v Klug*, 344 Mich App 744, 750; 2 NW3d 131 (2022) (citation omitted).

Where the parties have a contractual relationship and the plaintiff alleges a tort claim, to determine if the plaintiff has an action arising in tort, a court should not look to the parties' contract for a duty owed to the plaintiff, but the plaintiff must show that there is a separate and distinct legal duty owed independent of the contract. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 171; 809 NW2d 553 (2011).

Plaintiff has failed to show error with the trial court's decision to dismiss this count. The terms of the parties' contract plainly provide that the necessary zoning change to accommodate plaintiff's planned use of the property was part of the agreement. Plaintiff's claim for fraud in the inducement is dependent on duties defendants owed under the purchase agreement. Accordingly, the trial court correctly concluded that the complaint failed to allege any duty owed by defendants independent of the purchase agreement. On this basis, plaintiff failed to state a claim on which relief could be granted for fraud in the inducement, MCR 2.116(C)(8).

Plaintiff further argues that it stated its claim for fraud in the inducement with particularity, as required by MCR 2.112(B)(1). The trial court agreed with plaintiff that it "has made the particular identification as required by law in the above paragraphs, and they all are part of the contract for the sale of the property. See MCR 2.112(B)(1)." The trial court ruled in favor of plaintiff and, therefore, plaintiff cannot show that it was aggrieved by this part of the court's opinion.

## IV. TORTIOUS INTERFERENCE WITH A CONTRACT

Plaintiff alleged that the individual defendants were liable in tort for interfering with the agreement between plaintiff and Sardinia or Sardinia Development. The trial court also granted, under MCR 2.116(C)(8), summary disposition for defendants on this claim on the ground that plaintiff failed to allege any actions by defendants that amounted to tortious interference with the contract. We agree.

Plaintiff claims that the individual defendants intentionally interfered with the purchase agreement between plaintiff and Sardinia.

> In order to establish tortious interference with a contract or business relationship, plaintiffs must establish that the interference was improper. In other words, the intentional act that defendants committed must lack justification and purposely interfere with plaintiffs' contractual rights or plaintiffs' business relationship or expectancy. The "improper" interference can be shown either by proving (1) the intentional doing of an act wrongful per se, or (2) the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiffs' contractual rights or business relationship. [*Advocacy Org for Patients & Providers*

*v Auto Club Ins Ass'n*, 257 Mich App 365, 383; 670 NW2d 569 (2003) (internal citations omitted).]

In *Dzierwa v Mich Oil Co*, 152 Mich App 281, 287; 393 NW2d 610 (1986), this Court held that tortious interference with a contract requires proof of both a breach of contract caused by the defendant and that the defendant was a third party to the contract or business relationship. In *Dzierwa*, 152 Mich App at 287, the allegations were directed at the defendant's president, director, and controlling shareholder. Because that individual was not a third party, the plaintiff failed to support its claim for tortious interference with a contract. *Id*. at 288. In *Reed v Mich Metro Girl Scout Council*, 201 Mich App 10, 13; 506 NW2d 231 (1993), this Court explained that corporate agents are not liable for tortious interference with the corporation's contracts unless they acted solely for their own benefit with no benefit to the company. See also *Bradley v Philip Morris, Inc*, 194 Mich App 44, 50-51; 486 NW2d 48 (1991), vacated in part on other grounds 440 Mich 870 (1992).

Plaintiff, however, argues that the Supreme Court's decision in *Dep't of Agriculture v Appletree Mktg, LLC*, 485 Mich 1, 17-19; 779 NW2d 237 (2010), stands for the rule that corporate officers can be held personally liable for their individual tortious acts committed in the course of business, regardless of whether they acted for their personal benefit or the corporation's benefit, and that holding applies equally to the claim of tortious interference with a contractual relationship. The tort at issue in *Appletree Mktg* was conversion. The holding from *Appletree Mktg* has been extended to other tort theories, but not tortious interference with a contract. See *Casias v Wal-Mart Stores, Inc*, 764 F Supp 2d 914, 918-919 (WD Mich, 2011), aff'd 695 F3d 428 (CA 6, 2012). Since the release of *Appletree Mktg*, this Court has not extended its holding to cases involving tortious interference with a contract or business relationship. There is no support for plaintiff's argument that *Appletree Mktg* modified the elements of a claim of tortious interference involving a corporate officer. Plaintiff still must prove that any agents or officers of the parties involved in the purchase agreement that caused the breach of contract were acting out of their own interests, not the corporation's interests.

After reviewing the allegations in plaintiff's complaint, it failed to allege that the individual defendants were acting in their own interests. While there is no dispute that the individual defendants entered into the agreement with another party to sell the same property and removed the zoning request from the city council's agenda, plaintiff has not alleged how those actions benefited the individual defendants personally. Given this shortcoming in plaintiff's claim, the trial court did not err in granting summary disposition for defendants under MCR 2.116(C)(8).

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh